[S.F. No. 24282. Nov. 16, 1981.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
JUAN VALLEJO CORONA, Real Party in Interest.

194

## COUNSEL

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Arthur G. Scotland, Joel Carey and J. Robert Jibson, Deputy Attorneys General, H. Ted Hansen, District Attorney, Ronald W. Fahey, Roger W. Pierucci and Mark L. Musto for Petitioner.

No appearance for Respondent.

Terence K. Hallinan, Michael A. Mendelson, Isaiah B. Roter and Roy J. Van Den Heuvel for Real Party in Interest.

## OPINION

**RICHARDSON, J.**—Following reversal of his conviction on 25 counts of first degree murder because of his trial counsel's incompetence and conflict of interest, defendant Juan Corona was permitted to relitigate his earlier unsuccessful challenges to two search warrants which had produced evidence leading to his conviction. The People (hereinafter petitioner), protesting relitigation of the search issues, and contending in any event that the search warrants were properly obtained and executed, seek a writ of mandate to set aside the trial court's order suppressing much of the evidence seized pursuant to these two warrants. (Pen. Code, § 1538.5.)

During oral argument, defense counsel stipulated to the admission (subject to possible relevancy objections) of a portion of the evidence seized during execution of the first warrant (namely, six rounds of nine millimeter ammunition found in defendant's van), and all of the evidence seized during execution of the second warrant. This stipulation,

assertedly based upon counsel's appraisal of the relevance and incriminatory nature of this evidence, was made in furtherance of expediting retrial. On the basis of our review of the complete record and the legal issues therein presented, we accept the stipulation which substantially narrows the issues before us and, accordingly, we do not further consider whether the foregoing evidence was properly seized.

With respect to the remainder of the evidence seized under the first warrant, we have concluded that the writ should issue. While rejecting petitioner's challenge to the trial court's jurisdiction to relitigate the suppression issues, we nonetheless conclude that the court erred in ordering the remaining evidence at issue suppressed. We further conclude that the thoughtful opinion of Justice Grodin for the Court of Appeal, First Appellate District, in this case correctly treats these issues in this prolonged litigation and we adopt a portion of his opinion as our own.

The Court of Appeal opinion, with appropriate deletions and additions,* is as follows:

### [] PROCEDURAL BACKGROUND

On January 18, 1973, defendant was found guilty and convicted of 25 counts of first degree murder. On May 8, 1978, [the Court of Appeal] set the conviction aside because of inadequate legal representation and conflict of interest on the part of defendant's original trial counsel. (*People v. Corona* (1978) 80 Cal.App.3d 684 [145 Cal.Rptr. 894].) The factual background of the case is fully set forth in that opinion (*id.,* at pp. 693-701), and need not be repeated here. The court, in a unanimous opinion authored by Justice Kane, found that "trial counsel in gross neglect of his basic duty, failed to conduct the requisite factual and legal investigation in an effort to develop fundamental defenses available for his client and as a result of his neglect, crucial defenses were withdrawn from the case" (*id.,* at p. 706), thus warranting reversal on the basis of the then-prevailing standard of incompetency (*People v. Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]). In addition, and as independent grounds for reversal, the court determined that Corona's trial counsel, by obtaining and exploiting literary and dramatic rights to

---

*Brackets together, in this manner [], are used to indicate deletions from the opinion of the Court of Appeal; brackets enclosing material (other than the editor's parallel citations) are, unless otherwise indicated, used to denote insertions or additions by this court. (*Estate of McDill* (1975) 14 Cal.3d 831, 834 [122 Cal.Rptr. 754, 537 P.2d 874].)

Corona's life story "created a situation which prevented him from devoting the requisite undivided loyalty and service to his client. From that moment on, trial counsel was devoted to two masters with conflicting interests—he was forced to choose between his own pocketbook and the best interests of his client the accused." (80 Cal.App.3d at p. 720.) Without deciding whether such a conflict of interest was sufficient in itself to demonstrate denial of the right to effective representation as a matter of law, or whether a showing of actual prejudice was required, the court held that the case met both criteria, and that trial counsel's conduct "constituted not only an outrageous abrogation of the standards which the legal profession has set for itself and upon which clients have a right to rely, but also rendered the trial a farce and mockery calling for reversal of the conviction and requiring a new trial." (*Id.*, at p. 727.)

The court concluded its opinion by considering several issues relating to the new trial which was to take place. Of these, only one is relevant here. In a proceeding under Penal Code section 1538.5 to suppress certain evidence, the trial court had refused to permit defendant's counsel to call witnesses for the purpose of challenging the accuracy of information contained in affidavits supporting various search warrants. Justice Kane's opinion found this to be error under *Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 100-101 [104 Cal.Rptr. 226, 501 P.2d 234], but due to the unavailability of a transcript of the suppression hearing it could not be determined whether the error was prejudicial. The opinion states: "If, on retrial, appellant offers evidence to challenge the factual allegations of the affidavits supporting the search warrants, the court should proceed in accordance with the precepts enunciated in *Theodor* and as expressed herein." (80 Cal.App.3d at p. 729.)

On March 28, 1979, Corona's present attorneys noticed a motion to suppress all evidence seized under six search warrants. Petitioner opposed the motion on the ground that the court had no jurisdiction to entertain a second Penal Code section 1538.5 motion, but only to hear a *Theodor* motion as mandated by Justice Kane's opinion. Corona's attorneys countered that certain significant arguments had not been made at the original section 1538.5 motion, and that prior counsel's incompetency and conflict of interest had prevented full determination at that time.

Judge Patton, a distinguished and experienced jurist who tried the original case, presided at the new hearings which began April 25, 1979. At first he expressed doubt about the propriety of hearing the issues

sought to be presented by Corona's attorneys, but reserved judgment on that question and insisted on hearing the mandated *Theodor* aspects first. After doing so, however, he decided that the hearing would encompass all issues raised.

Almost nine court days were required to hear that matter, in the course of which twenty-five witnesses were sworn and testified. At the conclusion of the hearing the court issued a 44-page written opinion suppressing part of the evidence seized under the first warrant on the ground that the affidavit did not establish probable cause to search a specific building, and all of the evidence seized under the second warrant on the ground that the warrant was overly broad. The People stipulated that no evidence seized under the third through sixth warrants would be used [and, as noted above, defendant has now stipulated to the admission of all evidence seized under the second warrant]. Consequently the validity of those warrants [] is not an issue here.

1. *The trial court had jurisdiction to hear Corona's section 1538.5 motion on the validity of the search warrants.*

Petitioner contends that in view of the earlier (1972) proceedings the trial court lacked jurisdiction to hear a full-blown section 1538.5 motion on the validity of the warrants. Petitioner relies on *People v. Brooks* (1980) 26 Cal.3d 471 [162 Cal.Rptr. 177, 605 P.2d 1306]; *Madril v. Superior Court* (1975) 15 Cal.3d 73 [123 Cal.Rptr. 465, 539 P.2d 33]; *People v. Williams* (1979) 93 Cal.App.3d 40 [155 Cal.Rptr. 414] and *People v. Superior Court (Green)* (1970) 10 Cal. App.3d 477 [89 Cal.Rptr. 316].

In *Brooks*, the court held that a trial court *has* jurisdiction to hear a second section 1538.5 motion on the grounds presented in the first motion but not reached by the trial court when it granted the motion on other grounds. (26 Cal.3d at p. 474.) It based its decision on defendant's lack of opportunity for a "full determination" of the merits of his motion as originally made and noticed. In *Madril*, the court held that section 1538.5 does not confer jurisdiction upon a trial court, having once granted a defendant's suppression motion, to reconsider it prior to trial. (15 Cal.3d at p. 75.) *Green* was to the same effect, and its reasoning was approved in *Madril*. (*Id.*, at p. 77.) *Brooks* distinguished both *Madril* and *Green* as presenting situations "in which a party ... sought review or reconsideration of an adverse ruling rendered after a complete hearing on the search and seizure issues." (26 Cal.3d at p. 478.) In both

cases, the court noted, "the second hearings were properly characterized as relitigation of matters that the parties had opportunity to fully air in the first hearings." (*Ibid.*)

None of the cases cited by either party involved a trial court's jurisdiction to entertain a second suppression hearing after a conviction is reversed on grounds of constitutional denial of effective counsel. (Cf. *People* v. *Dorsey* (1973) 34 Cal.App.3d 70, 73 [109 Cal.Rptr. 712] [overruled on other grounds, *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 602 (119 Cal.Rptr. 302, 531 P.2d 1086)].) It seems obvious, however, that if the ineffectiveness of counsel infected the first suppression hearing, the defendant cannot be said to have had opportunity for "full determination" within the meaning of *Brooks.*

■ As Justice Kane's opinion noted (*People* v. *Corona, supra,* 80 Cal.App.3d at p. 720), the constitutional right to effective counsel "includes the requirement that the services of the attorney be devoted solely to the interest of his client undiminished by conflicting considerations. [Citations.]" And, as that opinion observed, "some cases take the view that a conflict of interest is so inherently conducive to divided loyalties as to amount to a denial of the right to effective representation as a matter of law." (*Ibid.*) ■ By that view the conflict of interest found to exist on the part of Corona's original counsel necessarily involved denial of the right to effective representation in all of the original proceedings, not just the trial itself, and by itself would warrant the determination that Corona should be entitled to assert anew his new constitutional rights under section 1538.5.

Justice Kane's opinion also noted an alternative view, that the defendant "must affirmatively establish that he has suffered some actual prejudice" resulting from the conflict (*ibid.*), but refrained from deciding which view was correct. Rather, the opinion stated that the case met both criteria (*ibid.*), and went on to discuss specific examples of prejudice as demonstrated by the record. While trial counsel's performance at the suppression hearing was not among the examples given, that omission is perhaps explainable by the fact (as the court noted) that no transcript of the suppression hearing was available.

[We need not here resolve the question whether actual prejudice must be shown in a conflict of interest situation such as occurred here. That question has been neither briefed nor argued in the present case.] If there is a general requirement that prejudice be shown from conflict

in interest, perhaps that requirement ought not to apply in a situation such as this where the defendant is hampered in presenting evidence as to what occurred in the original proceeding by the absence of any transcript thereof. Justice Kane in his opinion makes reference to unsuccessful efforts by the court to acquire "this important transcript," and to the consequent impossibility of determining whether denial of a hearing on defendant's *Theodor* motion constituted prejudicial error. (*People v. Corona, supra,* 80 Cal.App.3d at pp. 728-729.) We can only speculate as to the reasons for the absence of such a transcript,[1] but whatever the reason the result is defendant is deprived of the best evidence as to what actually occurred.

But assuming that a finding of prejudice is necessary, it was in fact made. Judge Patton expressly determined in the proceedings after remand that Corona's trial counsel "had not fully and adequately represented [Corona] in reference to the search warrants and that the entire matter should be reviewed." Moreover, the finding was amply supported under all the circumstances. The nature of trial counsel's conflict of interest was such that his economic interests were likely to be served by proceeding to trial with all the lurid evidence that the prosecutor could produce, rather than attempt to exclude legally inadmissible evidence on the basis of "technical" assertions of constitutional right.[2] The hearing on the original suppression motion *together* with hearing on various discovery motions lasted only a total of 4 hours and 35 minutes, and the points and authorities filed by original counsel for Corona did not address themselves to the particular issues which were advanced at the second hearing and which formed the basis for the rulings complained of.[3] Judge Patton, of course, was in a position to know what occurred at the first hearing, since he conducted it; and while it would have been preferable from the standpoint of appellate review for the record to re-

---

[1]Defendant suggests trial counsel may have sought to conceal his lack of diligence in the matter.

[2]Corona's new counsel made an offer of proof that prior counsel's investigator would testify that prior counsel noted the alleged deficiencies in the warrants but said he would eschew challenging them to avoid the appearance of trying to win on a technicality. Evidence to that effect however, was not actually introduced. Judge Patton remarked at the time that such evidence would "weigh heavily" when he decided how to proceed, and the People urge us to conclude that he relied improperly upon evidence that was not made a part of the record, but we are not prepared to indulge in that presumption.

[3]Nearly a year after this petition was filed, petitioner requested that we take judicial notice of certain records in Corona's prior appeal and habeas corpus proceeding. (See Evid. Code, §§ 452, 459; *People v. Preslie* (1977) 70 Cal.App.3d 486, 493 [138 Cal. Rptr. 828].) We have reviewed those records and find them immaterial to the issues before us.

flect more precisely the basis for his determination that Corona's interests were not then fully and adequately represented, the constitutional rights at stake require that we give considerable weight to his view of the matter. We conclude that the trial court had jurisdiction to hear Corona's section 1538.5 motion on the validity of the search warrants due to the effective denial of any meaningful opportunity for a full determination of the merits. We conclude also that Judge Patton did not abuse his discretion in deciding to hear the matter fully, a decision grounded—in part—upon considerations of fundamental fairness with which we agree.[4]

## 2. *The first warrant.*

On May 20, 1971, the body of Kenneth Whitacre was discovered buried on the Kagehiro Ranch, a ranch neighboring the J. L. Sullivan Ranch. The victim had been stabbed in the chest and had a severe hacking wound in the back of his head. Evidence suggested he had been killed recently and buried on May 19, 1971, some time between 10 a.m. and about 6 p.m.

On the morning of May 25, 1971, a body was found buried on the Sullivan Ranch, apparently the victim of similar violence. Between 4:30 p.m. and 10:45 p.m. on May 25, 1971, seven additional victims were unearthed from graves on the Sullivan Ranch. All the victims had similar stabbing and hacking wounds.

At 2:38 a.m. on May 26, 1971, a warrant issued authorizing the search of various buildings and vehicles for "Knives, axes, machetes, shovels or any other cutting or stabbing instruments or weapons"; bloodstained clothes, vehicles, or weapons of any sort; the personal effects of any of the victims; and "any other evidence including but not limited to payroll and employment records associating Juan V. Corona, or any other person" with the death of the victims.

---

[4][It is argued that] an alternative basis for jurisdiction [] is the explicit remand by [] [the Court of Appeal in *People* v. *Corona, supra*, 80 Cal.App.3d at pp. 728-729] for hearing and determination of the *Theodor* issues. *Theodor* calls for excision from a warrant affidavit of demonstrably false statements which the affiant had no reasonable basis for believing to be true, and a determination of probable cause based on the remaining, truthful portion. (*Theodor* v. *Superior Court, supra*, 8 Cal.3d at pp. 100-101.) Thus, the trial court necessarily had *jurisdiction* to redetermine probable cause. [Petitioner observes, however, that such jurisdiction is conditioned upon a prior finding of false statements and an excision from the affidavit. No such finding or excision was made in the present case.]

Among the places authorized to be searched was a building described in the warrant, and in the affidavit for the warrant, as a "single family residence dwelling located fartherest [*sic*] to the north in the complex of buildings known as the J. L. Sullivan Ranch, loading station and labor camp otherwise known as 4817 Live Oak Highway, Sutter County, California together with the premises surrounding said residence and any and all out buildings and appurtenances thereof." Although not so described in the affidavit or the warrant, the "single family residence dwelling" was in fact a mess hall for farm workers, and was also used by Corona as an office for occasional sleeping purposes. Search of that building yielded an awl or ice pick, a double-bladed axe, two hunting knives, a 9 [millimeter] automatic pistol and ammunition, a pair of tin snips, business receipts, Sullivan Ranch payroll check stubs, and credit cards in Corona's name.

The trial court ordered this evidence suppressed on the ground that the affidavit for the warrant did not establish probable cause for the search of the mess hall.[5]

[a. *Probable Cause to Search Mess Hall*]

■ On review, we bring to bear the same standard which governed the trial court: the magistrate's order issuing the warrant may be set aside only if the affidavit, as a matter of law, does not establish probable cause. (*People* v. *Superior Court* (*Bingham*) (1979) 91 Cal.App.3d 463, 470 [154 Cal.Rptr. 157]; *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 685].) In making that determination all of the facts and circumstances of the case must be considered. (*People* v. *Superior Court* (*Keifer*) (1970) 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Superior Court* (*Johnson*) (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 281, 493 P.2d 1145].) "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants."

---

[5]The trial court denied Corona's suppression motion relating to items seized pursuant to the first warrant from locations other than the mess hall, with one exception. It ordered suppression of a number of rounds of 9 [millimeter] ammunition found in a zippered bag underneath the floor mat in Corona's van, as having no "nexus" with the criminal activity described in the affidavits. [] [As we have explained, however, defendant has now stipulated to the admission of the ammunition found in the van.]

(*United States* v. *Ventresca* (1965) 380 U.S. 102, 109 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].)

The affidavit contained allegations of certain circumstantial evidence linking Corona to the crimes. Corona was a farm labor contractor, and contracted farm labor for both the Kagehiro and Sullivan ranches; he thus had access to the locations where the nine bodies were discovered; from the manner in which each of the victims had been killed and buried, it appeared they were probably killed by the same person; two receipts issued in Corona's name by a local company were found in the grave of one of the victims; and one of the victims was last seen alive entering a vehicle owned by Corona.[6]

The applicable constitutional test is "whether the affidavit states facts that make it substantially probable that there is specific property lawfully subject to seizure presently located in the particular place for which the warrant is sought." (*People* v. *Cook* (1978) 22 Cal.3d 67, 84, fn. 6 [148 Cal.Rptr. 605, 583 P.2d 130].) ■ Thus, the issue is whether the affidavit, in addition to linking Corona to the crimes, contained sufficient facts linking Corona to the building to be searched, so as to make it probable that he had stored or secreted items named in the search warrant there. (See *People* v. *Superior Court* (*Brown*) (1975) 49 Cal.App.3d 160, 167 [122 Cal.Rptr. 459]; *Frazzini* v. *Superior Court* (1970) 7 Cal.App.3d 1005, 1014 [87 Cal.Rptr. 32]; see also LaFave, Search and Seizure (1978) § 3.2, pp. 486-490.) An otherwise insufficient affidavit cannot be rehabilitated by evidence concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. (*Whitely* v. *Warden* (1971) 401 U.S. 560, 565, fn. 8 [28 L.Ed.2d 306, 311, 91 S.Ct. 1031].)

The affidavit recites that at approximately 9 p.m. on May 25, 1971 (the night the affidavit was prepared and the warrant issued), officers began surveillance of Corona's van. The van was observed to go into Marysville with two occupants, a Mexican male and a female. Then, after about 45 minutes, the vehicle with its two occupants travelled to

---

[6]Petitioner claims that the affidavit establishes certain additional facts linking Corona to the crimes, for example: that tire marks found near one of the gravesites matched the tires on Corona's van; that Corona was observed driving the van when one of the victims was last seen in it; and that an employee of the local company personally gave the receipts to Corona. The trial court, finding the affidavit insufficient to establish these propositions, nevertheless found sufficient basis in the affidavit for believing Corona to be the culprit. []

the Sullivan Ranch and parked "near the house in the northeast portion of the camp" for approximately 15 minutes. Thereafter, the vehicle travelled to a residence at 768 Richland Road, the address of Corona's residence. At this point, according to the affidavit, a female was seen to leave the vehicle and enter the residence.[7]

The trial court reasoned that so far as appeared from the affidavits Corona's connection to the mess hall building consisted (1) of his status as a labor contractor at Sullivan Ranch, and (2) of the fact that his vehicle was seen parked near the building for 15 minutes on the night of the day that 8 bodies were discovered buried on the ranch property. Petitioner contends that the affidavit yields additional inferences which support the magistrate's finding of probable cause.

First, petitioner contends that it is a reasonable inference from the affidavit, not only that Corona is a labor contractor at the Sullivan Ranch, but that he operated a labor camp there, in the complex of buildings of which the mess hall was a part. The affidavit referred to the "complex of buildings known as the J. L. Sullivan Ranch, loading station and labor camp." It also referred to "a bus apparently converted from a school bus currently parked on the above-described Sullivan property and bearing the painted name on its side of Juan Corona and designating him as a labor contractor."[8]

---

[7]This information was related by the affiant secondhand. The surveilling officer testified at the suppression hearing that he actually saw both occupants of the van exit and go into the Richland Road residence. Petitioner contends that notwithstanding this factual discrepancy the magistrate was entitled to rely upon an inference from the face of the affidavit that the man in the car (assertedly Corona) exited from the car at the Sullivan Ranch. [] [We agree. Assuming that the affiant's incorrect representation was a negligent one, the appropriate procedure is to eliminate the inaccuracy and determine independently whether, as corrected, the affidavit is sufficient. (*People v. Kurland* (1980) 28 Cal.3d 376, 389 [168 Cal.Rptr. 667, 618 P.2d 213]; *Theodor v. Superior Court, supra*, 8 Cal.3d 77, 101, fn. 14.) Even had the affiant correctly reported that *both* occupants left the car and entered the Richland Road residence, an inference would have remained that Corona, the probable male occupant, surveilled the Sullivan Ranch mess hall for 15 minutes and possibly entered it. As we later explain, that inference would support the conclusion that property described in the affidavit might be found there.]

[8]The trial court determined it could not consider this description in evaluating the affidavit because it appeared only in the recital of reasons for the request for the warrant and was not supported by independent factual averments. Petitioner contends this was error, and relies upon *People v. Superior Court (Brown), supra*, 49 Cal.App.3d 160, 166. In *Brown* the affidavit recited that a particular house was occupied by the defendant, but contained no factual allegations in support of that recitation. The trial court in *Brown* characterized the statement as "'a recital of a *reason* for the application'"

The trial court, in evaluating the particularity of the first warrant's description of items to be seized, expressed the view that Corona was a labor contractor "whose business it was to provide other men to work for farmers, including transportation to and from the farm site," and that Corona was the type of labor contractor who "feeds and houses the laborers (at a labor camp)."

In addition, petitioner contends that it is a fair inference that a labor contractor who operates a labor camp has access to the buildings in the labor camp complex, at least for the purpose of caring for the farm workers; and that he is likely to use buildings within the labor camp as a place to maintain records incident to his business.

Finally, petitioner contends that it is reasonable to infer from the facts regarding the surveillance of Corona's van on the night of May 25, 1971, and its presence outside the mess hall building for approximately 15 minutes at 10 p.m., that Corona *in fact* entered the mess hall that night, and that he did so either in furtherance of his business relationship as the farm labor contractor or to transfer, conceal, or dispose of criminal evidence in the van or at the crime scene. On either premise, petitioner contends, it was reasonable for the magistrate to conclude that there was a substantial probability that property described in the affidavit would be found there.

Petitioner calls our attention also to the extreme urgency of the situation: the affidavit was prepared, and the warrant was issued, during the course of an ongoing investigation into what appeared, at least, to be the work of a homicidal maniac on the loose; there was thus a heightened risk, petitioner contends, of loss of evidence or further homicide which demanded immediate action. (Cf. *People* v. *Sirhan* (1972) 7 Cal.3d 710, 739 [102 Cal.Rptr. 385, 497 P.2d 1121] [overruled in part, on other grounds, *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 593, fn. 7 (150 Cal.Rptr. 435, 586 P.2d 916)].) [Fn. omitted.]

[] The affidavit, hastily prepared, leaves more to inference than was desirable, or even necessary. We cannot say, however, that the infer-

and not "'a statement under oath as to the fact ... that defendant ... in some manner occupied or had control over the subject premises or placed the items therein.'" (*Ibid.*) The appellate court disagreed, saying, "Viewed in a common sense rather than a hypertechnical way, the allegation of residence is a direct averment under oath of the fact asserted and therefore was properly considered by the magistrate." (*Id.*, at pp. 166-167.)

ences suggested by petitioner are so attenuated that they could not reasonably have been accepted by the issuing magistrate. The magistrate could have reasoned that Corona was in his car on the night of May 25, 1971; that he went to the Sullivan Ranch that night for *some* reason; and that the reason related to the ongoing discovery of victims on the Sullivan Ranch and the probable existence of incriminating evidence in the mess hall building. In deference to the principle that doubtful or marginal cases should be largely determined by the preference to be accorded warrants, we conclude that the affidavit for the first warrant supplied probable cause to search the mess hall, and that the trial court therefore erred in suppressing evidence from that building. [End of Court of Appeal opinion.]

b. *Seizure of Nine Millimeter Automatic Pistol and Ammunition at Mess Hall*

■ Defendant contends that, even if there was probable cause to search the mess hall pursuant to the first warrant, it did not authorize the seizure of guns or ammunition, only "Knives, axes, machetes, shovels, or any other cutting or stabbing instruments or weapons." According to defendant, the trial court properly suppressed the gun and ammunition found in defendant's desk at the mess hall because, "at the time the warrant was issued *no victims had been shot*; therefore, no nexus existed between the gun and criminal activity." (Italics in original.)

The People correctly observe, however, that the warrant also authorized seizure of "any other evidence ... associating Juan V. Corona, or any other person," with the death of the victims, as well as seizure of "blood-stained weapons *of any sort.*" (Italics added.) The pistol and ammunition were discovered in a desk whose contents bore defendant's name. These items were lying beside a hunting knife; the gun was cocked, loaded and appeared to have either bloodstains or rust on its barrel. Although most of the victims seemed to have been stabbed to death, it was not unreasonable under the circumstances to conclude that the gun (and its ammunition) had been used to facilitate some of the murders, and that these items thus constituted evidence associating defendant with the victims' deaths. We conclude that the trial court erred in suppressing the gun and ammunition found at the mess hall. Having so concluded, we need not resolve the People's additional contention that seizure of these items was also justified under the "plain view" doc-

trine. (See *People* v. *Hill* (1974) 12 Cal.3d 731, 761-764 [117 Cal.Rptr. 393, 528 P.2d 1].)

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of May 30, 1979, and to hold such further proceedings as may be consistent with our opinion.

Tobriner, J., Mosk, J., Newman, J., Kaus, J., and Broussard, J., concurred.

**BIRD, C. J.**—I concur in the opinion of the court. In light of the highly unusual facts of this case, there was probable cause to search the Sullivan Ranch mess hall. Those facts include the discovery of eight dead bodies on the ranch the day before the warrant issued and the reasonable belief that a maniacal killer was loose. Fortunately, such circumstances are extremely rare. The uniqueness of this particular set of facts makes this case *sui generis* and of limited precedential value.