[No. A069298. First Dist., Div. Two. July 8, 1996.]

THE PEOPLE, Plaintiff and Appellant, v.
FERNANDO MAYORGA SOTELO, Defendant and Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald Engler and John H. Deist, Deputy Attorney Generals, for Plaintiff and Appellant.

Russo, Weintraub, Bellia & Morton and Daniel J. Russo for Defendant and Respondent.

---

## OPINION

### HAERLE, J.—

#### I. INTRODUCTION

This is an appeal by the People from an order of the trial court dismissing several drug-related charges against the defendant after the prosecution admitted it could not proceed to trial because of the court's grant of a second motion made by the defendant to suppress evidence discovered in a search of the defendant's home. Previously, another trial judge in the same county had denied the defendant's first motion under Penal Code section 1538.5[1] to suppress the same evidence, a motion based on the police's alleged violation of the "knock-notice" provisions of section 1531. We hold that the court improperly reconsidered this issue and, accordingly, reverse.

#### II. FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 1993, Pleasanton Police Detective Debbie Blumenthal submitted an affidavit for a warrant to search defendant's person, home (located in Benecia, Solano County) and vehicle. The affidavit alleged that Detective Blumenthal had met with a "citizen informant" who lacked any prior criminal history and who claimed that defendant was involved in the manufacture and use of methamphetamine. The affidavit further alleged that the consultation of records from other law enforcement agencies and conversations with other peace officers confirmed such activity by the defendant.

Based on Detective Blumenthal's affidavit, a search warrant was issued. It was executed on August 16 by the Benecia Police Department. The officers who searched defendant's home encountered his wife (codefendant Lisa Hiscox) and an infant; they also located a purported methamphetamine laboratory, various controlled substances, drug paraphernalia, cash and firearms in the house.

On August 23, defendant was arrested. Later the same day, the Vallejo police searched a storage locker in that city which had been rented by defendant and seized evidence therefrom. Following a preliminary hearing

---

[1] All further statutory citations herein are to the Penal Code.

on November 18, the prosecution filed an information against both defendant and his wife on December 3. That information charged both defendants with five separate violations of various provisions of the Health and Safety and Penal Codes with respect to the manufacture and possession and possession for sale of various drugs. The information also included one count of child endangerment and alleged that the defendants were armed with firearms in the course of the commission of the various offenses. (See § 12022, subd. (a).)

Defendant pled not guilty on December 7 and, on January 19, 1994, filed a motion to suppress evidence under section 1538.5. That motion charged that the police had improperly obtained evidence against the defendant when, on August 16, they entered his home allegedly in violation of the knock-notice requirements of section 1531 and when they searched, without a warrant and allegedly without his consent, the storage locker in Vallejo. Codefendant Hiscox did not join in this suppression motion.

On March 2, 1994, Judge Michael Nail heard evidence on defendant's motion to suppress. At that hearing, Hiscox testified that she was at home alone (in a house she and defendant owned) on the day in question. Police officers entered the home, she testified, by breaking down the front door within 10 seconds after demanding admittance. Two police officers testified, however, that they demanded admittance two or three times and waited between twenty-five and sixty seconds before forcibly entering the house. Other police officers testified with respect to the search of the defendant's Vallejo storage locker.

On March 7, 1994, Judge Nail denied the motion to suppress with respect to the entry into defendant's Benecia home on August 16, but granted the motion with respect to the August 23 search of defendant's storage locker. Judge Nail therefore suppressed the evidence obtained in the storage locker, but not the evidence found in defendant's home.

At the conclusion of the hearing, defendant's trial counsel informed the court that defendant intended to retain a new attorney. On March 11, the defendant's second (and present) counsel was substituted for his first trial counsel.

On April 6, 1994, that counsel filed a motion on behalf of the defendant to traverse the search warrant issued based on Detective Blumenthal's affidavit and to suppress the evidence that had been seized at the defendant's home. The motion alleged that the Vallejo police had knowingly used false information from an informant to obtain the warrant. The motion was specifically

based on the "subfacial" invalidity of the warrant, i.e., on the doctrine enunciated by the United States Supreme Court in *Franks* v. *Delaware* (1978) 438 U.S. 154, 155-156 [57 L.Ed.2d 667, 672, 98 S.Ct. 2674] (*Franks*).

The district attorney, in opposition memoranda, argued that the court had no jurisdiction to hear this motion because Judge Nail had previously denied a motion to suppress the evidence obtained from the house.

The new defense counsel replied by asserting, both in writing and verbally, that defendant was entitled to file the second motion to suppress because his previous attorney had challenged only the knock-notice aspect of the search and not the validity of the underlying search warrant. He therefore asked the superior court to consider the "single issue" of whether that warrant was validly issued.

Codefendant Hiscox joined in defendant's motion to traverse the search warrant and also brought a separate motion to suppress on the ground that the police had violated the knock-notice requirements of section 1531.

These two motions were heard simultaneously by Judge James Moelk on December 29, 1994. At the outset of the hearing, defendant's counsel acknowledged that he was challenging only the validity of the of the search warrant. He stated: "I'm not making any allegation, at least as to the knock-notice, that it was handled—done improperly or anything like that, so I'm out of that."

In considering these motions, Judge Moelk reviewed the transcripts of the March 1993 hearing before Judge Nail and also heard supplemental testimony from Benecia Detective Sears, who conducted the knock-notice entry. Sears testified that he knocked on the door twice and entered the home 15 seconds after the second knock.[2] Additionally, and in connection with the motions filed by both defendants to traverse the search warrant, Judge Moelk also heard in camera testimony from Detective Blumenthal.

Judge Moelk ruled on these two motions on January 12, 1995. He stated that he had concluded that the defendant had received ineffective assistance from his first trial counsel in that the latter had not challenged the validity of the search warrant. He therefore concluded that the defendant was entitled to "raise the additional issue or the 1538 again."

Judge Moelk next declared the search warrant valid, i.e., rejected the attack on Detective Blumenthal's affidavit. However, he then ruled, *as to*

---

[2] This testimony was consistent with Detective Sears's testimony before Judge Nail on March 2.

*both defendants*, that the police had not complied with the knock-notice requirements of section 1531. When the prosecutor indicated that he would be unable to proceed without the evidence obtained from the home, Judge Moelk dismissed the charges against both defendants.[3]

The People filed a timely notice of appeal.

## III. Discussion

Over two decades ago, our Supreme Court articulated the basic rule with respect to second bites out of the section 1538.5 apple. In *Madril* v. *Superior Court* (1975) 15 Cal.3d 73 [123 Cal.Rptr. 465, 539 P.2d 33] (*Madril*), Justice Clark, speaking for a unanimous court, wrote: "Therefore, . . . we hold that determination of a 1538.5 motion at a special hearing in the superior court—whether in the defendant's or in the People's favor—deprives that court of jurisdiction to reconsider the matter unless the People, pursuant to subdivision (j) seek to reopen the matter *at trial* upon a showing of good cause." (*Id.* at pp. 77-78, original italics.) In so holding, Justice Clark cited with approval (among several other cases) *People* v. *Superior Court* (*Green*) (1970) 10 Cal.App.3d 477 [89 Cal.Rptr. 223] (*Green*).

A few years later, the court carved out a limited exception to the *Madril* rule. In *People* v. *Brooks* (1980) 26 Cal.3d 471, 474-478 [162 Cal.Rptr. 177, 605 P.2d 1306] (*Brooks*), the court held that a trial court did have jurisdiction to hear a second section 1538.5 motion in one very specific circumstance. That circumstance was later summarized by the court in the following terms, terms we find instructive for purposes of this case: "In *Brooks*, the court held that a trial court *has* jurisdiction to hear a second section 1538.5 motion on the grounds presented in the first motion but not reached by the trial court when it granted the motion on other grounds. [Citation.] It based its decision on defendant's lack of opportunity for a 'full determination' of the merits of his motion as originally made and noticed. In *Madril*, the court held that section 1538.5 does not confer jurisdiction upon a trial court, having once granted a defendant's suppression motion, to reconsider it prior to trial. [Citation.] *Green* was to the same effect, and its reasoning was approved in *Madril*. [Citation.] *Brooks* distinguished both *Madril* and *Green* as presenting situations 'in which a party . . . sought review or reconsideration of an adverse ruling rendered after a complete hearing on the search and seizure issues.' [Citation.] In both cases, the court noted, 'the second hearings were properly characterized as relitigation of matters that the parties had opportunity to fully air in the first hearings.' [Citation.]" (*People*

---

[3]Although a notice of appeal was filed with respect to the dismissal of the case as to codefendant Hiscox, the Attorney General has abandoned this appeal.

v. *Superior Court (Corona)* (1981) 30 Cal.3d 193, 199-200 [178 Cal.Rptr. 334, 636 P.2d 23] *(Corona).)*

In *Corona,* decided a year after *Brooks,* the court held that the *Brooks* exception to the *Madril* principle applied to a case where the defendant's conviction had been reversed on the ground that he had, in the first trial, been denied effective assistance of counsel. In an explanation that this defendant properly stresses, the court said: "It seems obvious, however, that if the ineffectiveness of counsel infected the first suppression hearing, the defendant cannot be said to have had opportunity for 'full determination' within the meaning of *Brooks.* [¶] . . . [T]he conflict of interest found to exist on the part of Corona's original counsel necessarily involved denial of the right to effective representation in all of the original proceedings, not just the trial itself, and by itself would warrant the determination that Corona should be entitled to assert anew his new constitutional rights under section 1538.5." *(Corona, supra,* 30 Cal.3d at p. 200.)

The next voice to be heard on this subject was ours. In *People v. Nelson* (1981) 126 Cal.App.3d 978 [179 Cal.Rptr. 195] *(Nelson),* we were faced with a claim by a criminal defendant that the *Brooks* exception permitted him, at a second 1538.5 hearing, to raise a ground for suppression not raised by him at the first such hearing. In denying the requested expansion of the *Brooks* exception, we first of all noted a "declared legislative purpose of preventing the unnecessary expenditure of time resulting from multiple suppression hearings" and went on to declare: "Allowing more than one hearing would invite abuse, since a defendant may prefer to 'forum shop' by raising each ground separately *and possibly before different judges.*" (126 Cal.App.3d at p. 983, italics added.)

We then went on to reject that defendant's attempt to bring himself under the *Brooks* exception: "In contrast to *Brooks,* the defendant here raised a ground for suppression at the second hearing which was not raised at the first. Hence defendant's second hearing was not a completion of his first motion 'as initially made' [citation] or, as phrased earlier in the *Brooks* opinion, 'as originally made and noticed' [citation]. *Brooks,* therefore, is inapplicable to the present case. [¶] We conclude that, having failed to show good cause why the sufficiency of the affidavit offered in support of the search warrant was not challenged at the initial section 1538.5 hearing, defendant was not entitled, under section 1538.5, to a second pretrial suppression hearing, and that the trial court acted in excess of its jurisdiction in hearing such second motion; moreover, that the facts of defendant's case do not fall within the exception announced in *People v. Brooks, supra,* 26 Cal.3d 471." *(Nelson, supra,* 126 Cal.App.3d at p. 984.)

In *People* v. *Thomas* (1983) 141 Cal.App.3d 496, 501 [190 Cal.Rptr. 408] (*Thomas*), our colleagues in Division Four made the rule quite explicit: a defendant cannot relitigate, in a second section 1538.5 pretrial hearing, the same basis for suppressing evidence that had been litigated and found wanting in an earlier hearing. It held: "Judge Eymann made a 'determination of a 1538.5 motion . . . in the superior court,' and 'in the People's favor,' when he denied defendant's motion to suppress after it had been 'relitigated' at the People's request pursuant to section 1538.5, subdivision (j). [¶] After Judge Eymann had made his determination, defendant's sole remedy was to seek pretrial review by petitioning this court for extraordinary relief pursuant to section 1538.5, subdivision (i). [Citation.] He did not exercise that remedy. Judge Eymann's determination otherwise deprived the superior court of 'jurisdiction to reconsider the matter,' which means that the hearing conducted before Judge Jamar, on defendant's purportedly renewed motion, was in excess of the court's jurisdiction and of no effect. [Citation.]"

In his argument in favor of Judge Moelk's decision to reconsider the knock-notice issue as it impacted on him, this defendant relies strongly on the next decision in this series, that of the Sixth District in *People* v. *Camilleri* (1990) 220 Cal.App.3d 1199, 1203 [269 Cal.Rptr. 862] (*Camilleri*.) In that case, the defendant was challenging the action of the police in entering and "securing" his residence pending procurement of a search warrant. His first suppression motion was based on lack of consent and failure to comply with the knock-notice provisions of section 844, and was denied. His second, via new counsel, claimed illegal warrantless entry, and was accompanied by a declaration of the first defense counsel that he had failed to make the second argument through neglect and not due to any tactical decision. Without reaching the issue of jurisdiction, the trial court denied this motion, too. The defendant appealed from the second denial.

In affirming this ruling, the court *explicitly eschewed the issue of the jurisdiction of the trial court to hold a second hearing*.[4] Indeed, it did not even consider the second suppression ruling (although this was the ruling appealed from), but stated that it would regard the appeal as one on the appellate record based on alleged ineffective assistance of counsel *at the first hearing*.

The last case in this series is *People* v. *Schunk* (1991) 235 Cal.App.3d 1334, 1337-1340 [1 Cal.Rptr.2d 438] (*Schunk*). That case, as this, was an appeal by the People from a dismissal order following the grant by the trial

---

[4]The court did include a brief paragraph summarizing the holdings in *Neison, Thomas* and *Corona*, but specifically avoided applying the principles enunciated in these cases to the fact situation before it.

court of a second motion for suppression. There, as here, the Attorney General argued lack of jurisdiction in the trial court to even consider the motion the second time around, citing *Thomas*. There, however, the procedural background was quite different from *Thomas* and the instant case: the first motion to suppress was denied "without prejudice" when the defendant's first counsel failed, after several continuances, to appear at the hearing on his motion. Stressing language in both section 1538.5, subdivision (i), and *Camilleri* concerning a defendant's right to "fully litigate" the validity of a search and seizure, the court held: "Upon the record now before us, we see no bar to the trial court's allowing respondent's second suppression motion. Respondent's first suppression motion was never fully litigated and was denied 'without prejudice.' " (235 Cal.App.3d at p. 1340.)

The Attorney General cites *Schunk* in support of his argument that Judge Moelk lacked jurisdiction to grant defendant's second suppression motion. Obviously because of their implication of the "ineffective assistance of counsel" issue, defendant relies principally upon *Corona* and *Camilleri*. We believe both parties' reliance is misplaced. In the first place, *Schunk* is clearly distinguishable because, as noted, that case involved a denial of the first motion "without prejudice" and, therefore, a circumstance in which the issue had never been "fully litigated." And *Camilleri* advances defendant's position not a whit because, again as previously noted, the court in that case never addressed the issue of jurisdiction to hear a section 1538.5 motion a second time, preferring instead to treat the case as an appeal from the first denial of the motion and hence involving only the issue of whether in fact there had been ineffective assistance of counsel.

With respect to *Corona*, defendant argues that, by allowing him to raise the *Franks* issue because of the ineffective assistance of counsel, Judge Moelk made "an implied finding that incompetence of counsel colored all aspects of the March suppression hearing." Albeit deft, the argument must fail. There is simply nothing in the record to support the existence of any such "implied finding." To the contrary, defendant's second counsel made no argument at all, either in his several briefs to the trial court on the second motion or at oral argument, that there was any such broader manifestation of ineffective assistance of counsel. His substantive argument in favor of suppression was carefully limited to the *Franks* issue. Similarly, his assertion of ineffective assistance of counsel, and his predecessor counsel's exquisitely careful declaration in support of that assertion, was also explicitly so limited.

Nor do we think that the *Corona* exception to the *Madril* rule permits of "implied findings" on the issue of ineffective assistance of counsel. In this

connection, we note that in *Corona* the court was specifically addressing a circumstance (a conflict of interest which had previously been found to exist) which "*necessarily* involved denial of the right to effective representation *in all of the . . . proceedings . . . .*" (*Corona, supra,* 30 Cal.3d at p. 200, italics added.) Judge Moelk found that defendant's first counsel rendered ineffective service to defendant with respect to, and only with respect to, the *Franks* issue. Such a finding did not, to echo *Corona,* "necessarily" involve any other aspect of the prior representation.

In our view, the governing authority on this issue is the line of cases starting with *Madril* and including *Green, Brooks, Nelson,* and *Thomas.* Those cases, considered together, stand for the proposition that once a section 1538.5 motion has been made, argued and determined, it may not be reheard by the trial court on the same ground, at least pretrial. As noted above, those cases rejected the permissibility of second hearings which are " 'properly characterized as relitigation of matters that the parties had opportunity to fully air in the first hearings.' " (*Corona, supra,* 30 Cal.3d at p. 200, quoting *Brooks, supra,* 26 Cal.3d at p. 478.)

In our view, that is the rule applicable to these facts: Judge Nail heard testimony and argument on the knock-notice (and one other) issue for the full day of March 2, 1994. His decision five days later should have been an end to the issue as far as this defendant was concerned. And we think this resolution of the matter is particularly appropriate when, as here, a different judge heard the second motion. This is so because of the need, stressed by us in *Nelson,* to avoid even the appearance of "forum shopping."

We are thus led inexorably to the conclusion that Judge Moelk erred in allowing this defendant a second hearing with respect to the knock-notice issue. The authority discussed above would conceivably support the proposition—patently not before us—that Judge Moelk could grant the second motion on the *Franks* grounds urged by defendant in his moving papers below. But that is not what happened: Judge Moelk specifically rejected those grounds and, instead, granted the motion *as to both the defendant and his wife* on the knock-notice grounds. Although obviously inconsistent with Judge Nail's prior ruling regarding the defendant, Judge Moelk admittedly had jurisdiction to do this with respect to the wife. He did not, however, have jurisdiction to grant the motion as to this defendant on a ground (a) already litigated as to him and (b) expressly disclaimed by him both in his moving papers and at the hearing.

In sum, this defendant had fully litigated his knock-notice claim and lost; he was, therefore, not entitled to a second bite out of that apple.[5]

## IV. DISPOSITION

The judgment is reversed.

Phelan, J.,* concurred.

**KLINE, P. J.,** Dissenting.—The majority opinion is in my view irreconcilable with the pertinent case law; the result is both anomalous and unjust.

It is undisputed in this case that "ineffectiveness of counsel infected the first suppression hearing" (*People* v. *Superior Court* (*Corona*) (1981) 30 Cal.3d 193, 200 [178 Cal.Rptr. 334, 636 P.2d 23]) that appellant therefore cannot be said to have had the opportunity for a 'full determination of the grounds to suppress evidence, (*ibid.*) and that he is for this reason entitled to another suppression hearing. (*Ibid.*; *People* v. *Camilleri* (1990) 220 Cal.App.3d 1199, 1203 [269 Cal.Rptr. 862]. Nevertheless, enunciating a heretofore unknown legal principle, the majority says that the second suppression hearing that is required in these circumstances may only address issues not presented at the first hearing. No appellate court of this state has ever before applied such a limitation, which denies the defendant the opportunity to *fully* litigate his claim that evidence should be suppressed; that is, to address all of the bases of that claim. On the contrary, in *Corona, supra,* the Supreme Court indicated that the judge presiding over the second suppression hearing has discretion "*to hear the matter fully.*" (30 Cal.3d at p. 202.) Significantly, the court's decision to allow such complete reconsideration was "grounded—in part—upon considerations of fundamental fairness." (*Ibid.*)

The anomaly that results in this case from the majority's unprecedented limitation on the discretion of the judge presiding at the second suppression hearing is obvious. It is undisputed that Judge Moelk properly granted the codefendant wife's suppression motion on the identical basis that he did so in favor of appellant, and the case against her was dismissed for that reason. The majority thus permits evidence illegally obtained by the same police

[5]As a result of this holding, we do not need to address appellant's alternative ground that defendant lacked standing to complain of the entry into his home because he was not present at the time of the entry.

*Presiding Justice of the Court of Appeal, First District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

officers in the same search of the same premises to be used against one defendant but not against another. A more dramatic example of the unfairness the *Corona* court was at pains to prevent can hardly be imagined.

The unjust incongruence the majority achieves is exacerbated by the manifest correctness, as a substantive matter, of Judge Moelk's suppression order. Detective Sears, who estimated he waited just 15 seconds after knocking before commanding that the door be knocked down, admitted he had no reason to think any inhabitant might escape or evidence might be destroyed if he waited a bit longer. It is difficult to think anyone could quickly dispose of a methamphetamine laboratory, which in any case Sears was told was located in the garage, not the house.[1] Sears admitted he had no reason even to believe there was anybody then inside the house, which he had been surveilling. Appellant's wife testified she was preparing to breast-feed her 11-day-old daughter in the back bedroom when she heard the loud banging on the door. She said she immediately went to the front door to open it when the police "crashed in," forced her to the floor and restrained her with handcuffs. We do not live in a society in which the police are constitutionally permitted to conduct themselves in this fashion absent exigencies never apparent in this case.

The policies reflected in the case law the majority relies upon provide no basis upon which to prevent appellant from challenging the constitutionality of the forcible entry at the hearing conducted by Judge Moelk. As we explained in *People v. Nelson* (1981) 126 Cal.App.3d 978 [179 Cal.Rptr. 195], there are two reasons not to expand the exception to the rule of *Madril v. Superior Court* (1975) 15 Cal.3d 73 [123 Cal.Rptr. 465, 539 P.2d 33] carved out in *People v. Brooks* (1980) 26 Cal.3d 471, 474-478 [162 Cal.Rptr. 177, 605 P.2d 1306]: (1) the "declared legislative purpose of preventing the unnecessary expenditure of time resulting from multiple suppressions hearings," and (2) "[a]llowing more than one hearing would invite abuse, since a defendant may prefer to 'forum shop' by raising each ground separately and possibly before different judges." (*Nelson, supra,* at p. 983.) Neither of these policy considerations would be offended by affirming the judgment in this case, which involves no expansion of the *Brooks* exception. The second suppression hearing would have been held in any event, and the failure of counsel to present all issues at the initial hearing was the product of incompetence, not a desire to forum shop. The "savings" in judicial resources accomplished by limiting the scope of the second hearing, which is

---

[1]Sears stated that he assumed someone might blow up the lab while he was at the front door, though he admitted such a person would likely blow himself up in the process. Sears felt this assumption was "reasonable" because such an act was "not uncommon" when someone knocked on the door. This testimony is preposterous.

de minimis, certainly does not justify the disparate application of the Fourth Amendment that has resulted. If appellant's wife's constitutional rights were violated—and there is no longer any dispute about that—so must appellant's have been. By overriding the discretion of the trial judge as to the scope of the suppression hearing, which violates the rule set forth by Justice Richardson in *Corona*, the majority permits the use of evidence obtained through a constitutionally proscribed search and seizure. This should not be done.

For the foregoing reasons, I would affirm the judgment.

A petition for a rehearing was denied July 29, 1996, and on August 5, 1996, the opinion was modified to read as printed above. Kline, P. J., was of the opinion that the petition should be granted. Respondent's petition for review by the Supreme Court was denied October 23, 1996. Mosk, J., was of the opinion that the petition should be granted.