[No. B037713. Second Dist., Div. Seven. July 18, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
FRANK JOSE TERRONES, Defendant and Respondent.

COUNSEL

Ira Reiner, District Attorney, Maurice H. Oppenheim, Eugene D. Tavris and Donald J. Kaplan, Deputy District Attorneys, for Plaintiff and Appellant.

Mark Borden, under appointment by the Court of Appeal, for Defendant and Respondent.

OPINION

LILLIE, P. J.—Pursuant to Penal Code section 1238, subdivision (a)(7), the People appeal from an order dismissing the within cause after the superior court granted defendant's pretrial motion to quash a search warrant and suppress evidence. (Pen. Code, § 1538.5.) The return to the search warrant for defendant's residence indicates that police seized, inter alia, 34 grams of cocaine. Subsequently, defendant was charged in an information with possession for sale of cocaine (Health & Saf. Code, § 11351), and possession for sale of more than 28.5 grams of cocaine or 57 grams or more of a substance containing cocaine (Pen. Code, § 1203.073, subd. (b)(1)).

The People contend (1) the trial court erred in granting the motion to quash the warrant and suppress evidence because there was sufficient probable cause to justify issuance of the warrant and (2) assuming there was no probable cause to issue the warrant, the good faith exception to the Fourth Amendment exclusionary rule applies.

FACTS

*A. Search Warrant.*

On December 18, 1987, a search warrant was issued by a magistrate upon an affidavit of Officer Mark Scott, a narcotics investigator. The warrant authorized the search of defendant's residence, car, and person for, inter

alia, cocaine and narcotic paraphernalia. On the day it was issued, the warrant was executed by Officer Scott.

Officer Scott's affidavit set forth the following: That he has been a police officer for the City of Whittier for over seven years, and is currently assigned as a narcotics investigator; he has participated in the arrest of numerous persons for possession and sale of narcotics and has testified as an expert in the field of narcotics on numerous occasions; in the first week of November 1987 he was contacted by a confidential citizen informant (CI #1), who informed him that there is constant traffic to the residence at 8318 California Avenue, vehicles pull up to the residence and persons get out and stay for five minutes at a time, on some occasions Frank Terrones will walk over to a yellow Chevrolet Camaro parked in the driveway and remove a cap from the hub of the front wheel of the car and he (CI #1) has observed Terrones take something out and put the cap back on; during the second week of November, CI #1 again contacted Scott and told him that he (CI #1) had seen a man at 8318 California Avenue remove the hubcap from a small red and white pickup truck and place something into it.

Officer Scott further asserted that during the first week of November 1987, he spoke with a second confidential informant (CI #2), who told him that he (CI #2) had been regularly purchasing cocaine from a person known as Frank T. at 8318 California Avenue; CI #2 had seen large amounts of cocaine at the residence, had used the cocaine purchased from Frank T., and knew it was cocaine based on the symptoms experienced and recognized from prior use of cocaine.

The affidavit continued that during the second week of December 1987, Officer Scott was contacted by a third confidential citizen informant (CI #3) who told him that he (CI #3) had seen a man leave the front door at 8318 California Avenue and walk down the driveway carrying two clear plastic bags containing a white powdery substance; when the man saw him (CI #3), the man immediately tucked his hands beneath his armpits, hiding the two plastic bags, and he (CI #3) lives in the area and has seen constant traffic to the residence at 8318 California Avenue, people staying at the residence for short periods of time.

Officer Scott's affidavit concluded that Deputy Nunez of the Los Angeles County Sheriff's Department—Norwalk Station—told him that he (Nunez) had a confidential informant (CI #4) who had been at the residence at 8318 California Avenue within the past five days, and that CI #4 had purchased cocaine from Frank Terrones at the residence and had used the cocaine after purchasing it. Based on the above, as well as his training and

experience, Officer Scott was of the opinion that cocaine could be found at defendant's residence.

*B. Motion to Quash.*

Prior to the preliminary hearing in the municipal court, defendant moved to quash the warrant pursuant to Penal Code section 1538.5 on the ground that the face of the warrant was insufficient to establish probable cause because there were no foundational facts to show reliability or to support the conclusions in the affidavits that two of the informants were citizen informants, thus relegating them to the status of anonymous or untested informants, whose information requires corroboration and who cannot corroborate each other. The magistrate denied the motion, stating that it "will view the 'citizen informant' as one who is known to the police department and which rises above the level of a paid informant and anonymous informant." After the preliminary hearing, defendant was held to answer to the charge of possession for sale of cocaine.

In the superior court defendant renewed his motion to quash, making the same argument as in the first motion.[1] The superior court concluded that the search warrant affidavit was insufficient to demonstrate probable cause because the conclusory phrase "confidential citizen informant" was not substantiated by any foundational facts to enable the magistrate to draw that conclusion. ■ ■■ ■■ ■■ The court further found that the officer was not acting in good faith, even though Officer Scott testified at the hearing that prior to executing the affidavit to the search warrant he had met the two citizen informants face to face, had been to their homes, and knew their names and addresses.[2] In finding that the officer did not act in good faith, the court relied upon *United States* v. *Fuccillo* (1st Cir. 1987) 808 F.2d 173, and stated the officer was "reckless in not including in the affidavit information which was known or easily accessible to [him]. The [officer] here did . . . not take every step that could reasonably be expected of [him]. So I'm going to suppress the evidence."

---

[1] Although his first motion before the magistrate did not raise the issue of the failure of the officer executing the search warrant to follow the procedures in Penal Code section 1531, at the preliminary hearing defendant objected unsuccessfully to the admission into evidence of the cocaine on the ground that there was insufficient compliance with Penal Code section 1531. In his renewed motion to suppress in superior court, defendant stated that evidence supporting this claim would be presented at the special hearing, although no new evidence was offered. The court did not address the issue. Respondent does not raise the issue in his brief here.

[2] With certain exceptions not applicable here, a court cannot resort to facts outside the affidavit to determine whether it furnishes probable cause for the issuance of a search warrant (see *People* v. *Frank* (1985) 38 Cal.3d 711, 729 [214 Cal.Rptr. 801, 700 P.2d 415]), and an affiant's testimony at the hearing on the suppression motion cannot supply probable cause. (*Rodriguez* v. *Superior Court* (1988) 199 Cal.App.3d 1453, 1465 [245 Cal.Rptr. 617].)

After the court granted the motion to quash and suppress evidence, the People stated they were unable to proceed. Defense counsel moved to dismiss; the court granted the motion.

I

## PROBABLE CAUSE FOR ISSUANCE OF SEARCH WARRANT

■ California Constitution article I, section 28, subdivision (d) (Proposition 8), requires us to apply federal constitutional law to determine whether evidence should be excluded for offenses committed after June 9, 1982. (*People* v. *Long* (1987) 189 Cal.App.3d 77, 83 [234 Cal.Rptr. 271].)

■ The standard by which a magistrate must determine whether an affidavit is sufficient to establish probable cause for issuance of a search warrant is explained in *Illinois* v. *Gates* (1983) 462 U.S. 213, 238-239 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317]: "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." ■ While an informant's veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report, these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case, but understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question of whether there is probable cause to believe that contraband or evidence is located in a particular place. (*Id.,* at p. 230 [76 L.Ed.2d at p. 543].)

This test was adopted "so that, for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability." ■ ■ ■ ■ (*United States* v. *Reivich* (8th Cir. 1986) 793 F.2d 957, 959.)[3]

■ "An informant's veracity or trustworthiness may be established in a number of ways. If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions.

[3] Although California courts are not bound by the decisions of lower federal courts, even on federal questions, we may and do consider the cases cited herein as persuasive authority. (*People* v. *Neer* (1986) 177 Cal.App.3d 991, 1000-1001 [223 Cal.Rptr. 555].)

[Citation.] . . . Veracity also may be established through admissions against penal interest. [Citations.] Finally, an informant's reliability may be demonstrated through independent police corroboration of the information provided." (*United States* v. *Angulo-Lopez* (9th Cir. 1986) 791 F.2d 1394, 1397.) █ The fact that two apparently unassociated persons make the same assertion increases the probability that it is true; the mutually-supporting nature of two tips is an important ingredient in the "probable-cause mix." (*United States* v. *Laws* (D.C. Cir. 1986) 808 F.2d 92, 103; see also *U.S.* v. *Yarbrough* (9th Cir. 1988) 852 F.2d 1522, 1533 [interlocking tips from different confidential informants enhance the credibility of each].)

## II

### AFFIDAVIT PROVIDED SUBSTANTIAL BASIS FOR PROBABLE CAUSE DETERMINATION

██ █ Apparently relying on *People* v. *Kershaw* (1983) 147 Cal.App.3d 750 [195 Cal.Rptr. 311], the trial court noted that the affidavit did not set forth the facts supporting the officer's characterization of two of the informants as citizen informants, so the presumption of reliability that attaches to true citizen informants did not apply. (*Id.*, at p. 755.) The trial court then found that the affidavit contained no facts to establish the informants' reliability. Citing *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929, 938 [216 Cal.Rptr. 817], which held that three anonymous telephone calls, without more, do not corroborate each other, the trial court then concluded the affidavit in the instant case was insufficient as a matter of law, apparently deeming the informants unreliable and their information uncorroborated.

The trial court's analysis typifies the " 'excessively technical dissection of informants' tips' and the 'judging [of] bits and pieces of information in isolation against . . . artificial standards' against which the Supreme Court cautioned in *Gates* and *Upton*. See *Upton* v. *Massachusetts* [(1984) 466 U.S. 727, 732, 80 L.Ed.2d 721, 104 S.Ct. 2085.]" (*United States* v. *Reivich, supra,* 793 F.2d at p. 960.)

Nothing in the affidavit suggests that the informants' identities were unknown to the police. Rather, the reasonable implication is that the informants' names were simply omitted from the affidavit because of their desire for confidentiality. Moreover, someone tried to conceal baggies containing a white powder from the view of one of the citizen informants, who was a neighbor of respondent, thus suggesting that this informant was not a participant in criminal activity or a potential cocaine purchaser, but was in fact a "prototypical citizen informer"—a victim reporting a crime that

happened to him or a witness who personally observed the crime occur. (*People* v. *Kershaw, supra,* 147 Cal.App.3d at p. 754.) In addition, it is clear that the observations of the two citizen informants concerned activities outside of respondent's residence and in his driveway, consistent with observations of concerned neighbors rather than participants in criminal activities.

The dissent assumes, and we believe unreasonably so, that the identities of the four informants were unknown to the affiant, and speculates that the informants were nothing more than "four anonymous and uncorroborated tipsters." This is not what the affidavit states; and to so interpret the affidavit is to assume either naive, sloppy police work, or worse yet, a dishonest or dissembling affiant who characterizes anonymous telephone callers as "citizen informants." The only reasonable interpretation of this affidavit, and the one adopted by the issuing magistrate, is that the officer knew the informants' names and what a citizen informant is, and truthfully stated his conclusions. The only real issue is whether the affidavit contained sufficient facts to allow the magistrate to make an *independent* determination of the reliability and sufficiency of the information provided by the informants.

Although nothing suggests that the informants' names were not known to the police, had Officer Scott not obtained the names of the informants, he would not have been precluded from relying on the information. "Unless the informant is a well known public figure whose reputation for probity is virtually synonymous with his name, determination of his name alone adds nothing to his reliability. Rather the police must have reason to believe, and in fact believe, the informant is truly a citizen informant as opposed to a police informant. This belief and its reasonableness must be gathered from the surrounding circumstances one of which, mere name alone, is rarely relevant." (*People* v. *Superior Court (Haflich)* (1986) 180 Cal.App.3d 759, 768 [225 Cal.Rptr. 762].) In this case, sufficient circumstances were set out in the affidavit to justify Scott's characterization of two of the informants as citizen informants.

Even if the status of citizen informer does not eliminate the necessity of a showing of some degree of reliability (*People* v. *Mardian* (1975) 47 Cal.App.3d 16, 32 [121 Cal.Rptr. 269], overruled on another ground in *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1123, fn. 1 [240 Cal.Rptr. 585, 742 P.2d 1306]), the affidavit contains sufficient facts to justify an inference that the citizen informants were reliable. Although the affidavit does not state that the two citizen informants have a "track record" of supplying reliable information, the fact that the basis of their knowledge was personal observation "may compensate for a less than conclusive

demonstration of [their] credibility." (*United States* v. *Laws, supra,* 808 F.2d 92, 102.) Even had there been doubts as to an informant's motives, and there is no evidence of such doubts here, an explicit and detailed description of alleged wrongdoing along with a statement that the event was observed firsthand, entitles the tip to greater weight than might otherwise be the case. (*People* v. *Rochen* (1988) 203 Cal.App.3d 684, 688 [250 Cal.Rptr. 73].) ▮▮ Because both of the citizen informants made the same assertion of people making frequent brief visits to respondent's residence, which visits are an indication of narcotic traffic (*People* v. *Kershaw, supra,* 147 Cal.App.3d at p. 759), and both informants saw suspicious and unusual activities in the driveway of respondent's residence, their information is mutually supporting and increases the probability that such information is true.

Further supporting the existence of probable cause in this case is the information provided by the two admitted cocaine purchasers who told police they had purchased cocaine from appellant at his residence and then used the cocaine. Such statements are against their penal interests and are an indication of their veracity. (*United States* v. *Angulo-Lopez, supra,* 791 F.2d 1394, 1397.) ▮ Despite the fact that the affidavit in the instant case is silent as to the backgrounds of the purchaser informants, the concept of statements against penal interest should not be interpreted narrowly and grudgingly, but should be applied consistently with the underlying concern of determining the reliability of tips from informants. (*United States* v. *Reivich, supra,* 793 F.2d 957, 959-960.) That the informant may be paid or promised a "break" does not eliminate the residual risk and opprobrium of having admitted criminal conduct. (*Id.,* at p. 959.) ▮▮ Officer Scott received the information of one of the purchaser informants from Deputy Nunez, who, as a police officer may be presumed reliable (*United States* v. *Angulo-Lopez, supra,* 791 F.2d 1394, 1397), and the statements against penal interest of this informant tend to establish his reliability.

Based on the totality of the circumstances provided by the four informants, whose interlocking information enhanced the credibility of each of them, there was a substantial basis for the magistrate's probable cause determination that was an exercise of independent judgment and not just a rubber-stamping of conclusory police statements.

Since we conclude that there was a substantial basis for the issuing magistrate's probable cause determination, we need not consider the issue of the officer's good faith reliance on the search warrant under *United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]. Were we to address this issue, we would note that the trial court concluded that the officer in this case did not take every step that reasonably could be expected of him. The trial court thus implied that the officer did not undertake a

reasonable investigation to corroborate the information he received. This is clearly not the case. The officer did not seek a search warrant after the first informant had come forward, but obtained four different, but mutually supporting, sources of information concerning narcotics activities at respondent's residence. ■ The officer cannot be faulted for not personally surveilling the residence in an attempt to obtain information because "firsthand observation—particularly of a crime like drug-trafficking, which usually is accomplished professionally and furtively—is well-nigh impossible, and the use of informants is imperative." (*United States* v. *Laws, supra,* 808 F.2d 92, 104.)[4]

■ We conclude that the trial court improperly granted the defense motion to quash the warrant and suppress evidence and then improperly dismissed the case.

## DISPOSITION

The order of dismissal is reversed, and the trial court is directed to vacate its order granting defendant's Penal Code section 1538.5 motion to suppress evidence and to enter a new order denying the motion.

Woods (Fred), J., concurred.

**JOHNSON, J.**—I respectfully dissent. I do so for two reasons. First, I find the majority opinion too equivocal on a straightforward yet crucial issue—whether four anonymous and uncorroborated tipsters are enough to justify a search warrant. Second, I differ with the majority on a more subtle issue—whether the affidavit in the instant case adequately alleged the informants were something other than anonymous tipsters.

---

[4]The dissent perceives our decision as creating a world in which anonymous pranksters or enemies can manipulate or fool the police and a magistrate in an attempt to have the authorities invade the sanctity of the homes of innocent people. While we are sensitive to such a problem, *it is not presented in or even suggested by the instant case, which does not involve anonymous tipsters.* Rather, the real societal questions that may be posed by this case are (1) how much police investigation is enough for a search warrant and (2) is a magistrate entitled to assume that the officer has prepared his affidavit in an intelligent and honest fashion. Assuming our disposition has any impact at all on these broader issues, its impact is simply to allow a magistrate to give an intelligent and honest police officer credit where credit is due and to allow the officer to seek a search warrant when he has credible information from four different sources.

I. Several Anonymous Tips Taken Together Do Not Substitute for the Independent Corroboration Required to Establish Their Credibility.

As will be explained below I agree with the trial judge—and therefore disagree with the majority—that the affidavit filed in support of this search warrant failed to allege sufficient *facts* from which the magistrate could have reasonably concluded the officers knew the identity of the four informants. Accordingly, I conclude as did the trial judge that the two purported "citizen" informants required independent corroboration as, of course, did the two "criminal" informants. I would find it necessary to write separately, however, even if I agreed with the majority on the adequacy of the affidavit to establish the informants were known to the police. For, I think it is essential to underscore that stories told by four anonymous tipsters cannot supply the independent corroboration required to validate each other's reports and therefore support by themselves the issuance of a search warrant.

The majority holds the necessary independent corroboration is supplied in this case by adding together the independent reports of the four informants. But the anonymity of the informants distinguishes the instant case from those decisions which have held the corroboration required to establish the credibility of one informer may be supplied by information from other informers. (*People* v. *Sheridan* (1969) 2 Cal.App.3d 483, 488-489 [82 Cal.Rptr. 695] [citing cases]; *People* v. *Fein* (1971) 4 Cal.3d 747, 753 [94 Cal.Rptr. 607, 484 P.2d 583]; *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 621 [106 Cal.Rptr. 461]; *People* v. *Green* (1981) 117 Cal.App.3d 199, 205 [172 Cal.Rptr. 582]; *United States* v. *Hyde* (5th Cir. 1978) 574 F.2d 856, 863; *United States* v. *Landis* (9th Cir. 1984) 726 F.2d 540, 543; *United States* v. *Yarbrough* (9th Cir. 1988) 852 F.2d 1522, 1533; *United States* v. *Laws* (D.C. Cir. 1986) 808 F.2d 92, 103; *United States* v. *Ellison* (8th Cir. 1986) 793 F.2d 942, 946; and 1 LaFave, Search & Seizure (Supp. 1989) § 3.3(f), p. 40.)

In a typical example of this genre, *People* v. *Sheridan, supra,* the court upheld a search warrant based on the following facts. An informant whose identity was known to the police, Jones, told the officers he had been a user of marijuana, knew what it looked like and had recently seen a quantity of it in defendant's home. A short time later, one Burch, another informant whose identity was known to the police and who had previously been arrested on a narcotics charge, told the officers he knew what marijuana looked like and had recently seen some in defendant's home. (2 Cal.App.3d at p. 486.) The court concluded neither informer could be considered a "citizen informant" because each had previously involved himself in narcotics traffic. Therefore, neither informant standing alone had furnished

probable cause; corroboration was necessary. The court held the necessary corroboration existed in the independent reports of the same criminal activity by the two informants. (*Id.*, at p. 489.)

In a similar case, *People* v. *Green,* the court upheld a search warrant on the basis of an affidavit containing information supplied by four heroin addicts whose identities were not only known to the police but who were under arrest at the time. The police had further information from another known informant, also an addict, who was not under arrest. All the informants claimed defendant was selling heroin from his home and that they had seen it or purchased it there. The court found that although all five informants told a similar tale the affidavit established the information was furnished independently by each informer. Therefore, the court concluded, there was sufficient corroboration of the informants' tips to justify a search warrant. (117 Cal.App.3d at pp. 204-205.)

Similarly, in *United States* v. *Hyde, supra,* the court upheld a wiretap on the basis of information obtained from 10 informants, none of whom was "independently completely reliable" but all of whom were known by the police. The 10 known informants were "apparently independent of each other and . . . had no special reason to cooperate or collaborate." (574 F.2d at p. 863.) The court then devoted several paragraphs to an intricate analysis of the scores of details the 10 informants supplied and how those accounts meshed at so many points. The court concluded, "when the detailed information supplied by each of the ten informants agrees in so many particulars with that supplied by the others, probable cause may be inferred." (*Ibid.*)

But these cases must be distinguished from the situation where the police are relying solely on information received from anonymous tipsters rather than known informants or identified citizen witnesses. Four anonymous letters or four disembodied voices give ample cause for further investigation. But unless police independently verify *some* significant information contained in these anonymous reports, the four tips are not enough by themselves to supply the probable cause required for a search of someone's premises.

The case before us is much closer to *Higgason* v. *Superior Court* (1985) 170 Cal.App.3d 929 [216 Cal.Rptr. 817] than it is to *Sheridan, Green* and *Hyde* discussed above. In *Higgason,* the police received three anonymous telephone tips claiming defendant was selling narcotics from his residence. The first call was received by the "We Tip" organization which passed the information on to the police. The caller to "We Tip" said David Higgason was selling cocaine and marijuana from his residence. Higgason's vehicles

were described—an older model blue and white Lincoln and a new Toyota or Datsun "4X4" pickup truck. It was said Higgason picked up the drugs in Tijuana, Mexico. Higgason was further "reported to be the manager of the apartment building . . . ." The caller claimed firsthand knowledge of the illegal activity, saying it had been going on for approximately six months.

The next afternoon the police received a telephone call from an anonymous tipster. The caller was a man whose voice sounded like that of a person 50 to 60 years old. This caller gave the same information about marijuana and cocaine dealing as the "We Tip" call of the previous day. The second caller gave the same residence address for Higgason, but said his first name was "John." The caller also described Higgason as 40 to 41 years old, 5 feet 10 inches to 5 feet 11 inches, medium build and brown hair. The affidavit stated, "[t]his is substantially the same description as given to 'We Tip' by their anonymous caller."

The caller claimed Higgason's teenage son was beginning to sell drugs supplied by his father. There was foot traffic in and out of Higgason's apartment day and night, particularly on weekends. The caller said Higgason had a heavy iron gate at the top of the stairway to his apartment; a guest had to be "buzzed in" before he or she could reach the front door. According to the affidavit, "[i]t was reported . . . this gate was installed by Higgason to prevent unknown subjects from gaining access to his front door and to keep the police from gaining entry, giving him time to dispose of his drugs."

The caller also said Higgason kept marijuana and cocaine in his bedroom and this informant had seen, within that past week, several baggies of marijuana and bindles of white powder Higgason said was cocaine. The caller described the quantities of these drugs in which Higgason dealt. This informant wished to remain anonymous. He denied he was the person who called "We Tip" the previous day.

On September 26, 1983, a police officer drove to the apartment described as Higgason's residence. There was a late model Datsun pickup truck with no license plates in the driveway, as well as a 1972 Lincoln "blue/white in color," registered to John David Higgason, parked in front. The officer saw an iron gate at the top of the stairway to apartment No. 3. A Department of Motor Vehicles record check revealed the following description of John David Higgason: male, white, 5 feet 11 inches, 170 pounds, brown hair, brown eyes, born on July 20, 1943. The police ran utility checks of the apartment and found them to be in the name of John Higgason.

During the morning of October 3, 1983, the police received another telephone call. The caller refused to identify herself, but the officer believed the caller to be young and female. She said John Higgason and his teenage son were selling marijuana from their residence. Her boyfriend was buying marijuana from Higgason and she was tired of him spending all his money on drugs and "getting loaded" all the time. She stated she wanted her boyfriend's connection "busted" and refused to supply anything additional, hanging up.

Based on this information, a magistrate issued a search warrant which resulted in the seizure of narcotics and Higgason's prosecution.

The appellate court held there was no probable cause for the search. The court acknowledged anonymous tips, if corroborated by police investigation, could establish probable cause, "but three anonymous telephone calls, without more, cannot serve to corroborate one another." (170 Cal.App.3d at p. 938.) The court went on to explain, "In the final analysis, it is impossible to show different pieces of anonymous information emanated from *independent* sources and are *truly* corroborative of one another. (See *ibid.*) Granted, the calls here appear to have been made by at least two people, one older and male, the other younger and female. In addition, the male denied making the 'We Tip' call. But it nonetheless is impossible to say with reasonable certainty any of these calls was truly independent of either of the others. For this reason, the quantity does not improve the quality." (Italics in original.) The court also found the independent police investigation of Higgason did not pass muster under *Gates*. The details actually corroborated—Higgason's physical description, his residence and his vehicles—were facts anyone could obtain and did not raise any suspicion of criminal activity. (*Id.*, at p. 939.)

In the case before us, the probable cause showing is even weaker than in *Higgason*. In our case there is no information in the affidavit to suggest the four anonymous tips were actually received from four different persons. For all the magistrate could know, the calls could have been from one person in different guises. Furthermore, the police in the case before us made no attempt to corroborate any of the details supplied by the callers, not even the innocent ones. An anonymous tip times four may multiply out to something more than zero. Whatever that something is, however, it is not enough without more to deprive someone of his constitutional right to be secure against unreasonable searches and seizures.

## II. The Affidavit Failed to Present Facts From Which the Magistrate Could Reasonably Infer Informants I and III Were Reliable "Citizen Informants" Whose Identities Were Known to the Officers.

The affidavit submitted to the magistrate states the police were given information about defendant on two separate occasions by "confidential citizen informants." The allegation the information was supplied by *citizen* informants is significant because true citizen informants, unlike anonymous tipsters and criminal informants, are presumed reliable. (See discussion in *People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 754-757 [195 Cal.Rptr. 311].) However, the status of citizen informer cannot be bestowed by the police through a bald assertion. "The affidavit must *affirmatively* set forth the circumstances from which the existence of the status can reasonably be inferred by a neutral and detached magistrate." (*People* v. *Smith* (1976) 17 Cal.3d 845, 852 [132 Cal.Rptr. 397, 553 P.2d 557], italics in original.)

The majority opinion claims that by describing the informants as "confidential" citizen informants "the reasonable implication is that the informants' names were simply omitted from the affidavit because of their desire for confidentiality." (Maj. opn. at p. 147.) The majority bolsters this claim by noting that, "Nothing in the affidavit suggests that the informants' identities were unknown to the police." (*Ibid.*)

These arguments by the majority turn the rules for probable cause upside down. The burden is on the police to "set forth the facts tending to establish . . . probable cause . . . ." (Pen. Code, § 1527.) Our Supreme Court has stated, "Probable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe . . . the object of the search is in the particular place to be searched." (*People* v. *Dumas* (1973) 9 Cal.3d 871, 885 [109 Cal.Rptr. 304, 512 P.2d 1208].) And, as noted above, "[t]he affidavit must *affirmatively* set forth the circumstances" that establish probable cause. The majority says just the opposite. According to the majority, the magistrate should assume the police have the necessary facts to establish probable cause unless it affirmatively appears from the affidavit they do not. Furthermore, labeling the informants "confidential" is as ineffective as labeling them "citizens." In both instances the magistrate is given "a mere conclusary statement [providing] virtually no basis at all for making a judgment regarding probable cause." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 239 [76 L.Ed.2d 527, 549, 103 S.Ct. 2317].) True, the magistrate could have imagined the circumstances imagined by the majority: that the identity of the informants was known to the police but omitted for the informants' protection. But what is required in an affidavit is information, not imagination. "Sufficient information must be presented

to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." (*Ibid.*; and see *People* v. *Smith* quoted *ante* at p. 155.) In the case before us the affidavit contains no facts suggesting the informants' identity was known to the police, but concealed. (Cf. *People* v. *Cohn* (1973) 30 Cal.App.3d 738, 743, fn. 6 [106 Cal.Rptr. 579].) Indeed as the trial judge pointed out, it even omits the language traditionally placed in affidavits to denote that an unidentified informant is a citizen whose identity is known to the police. "I received information from a confidential citizen informant who did not want his or her name disclosed. They left their name and phone number, but did not want it given to you." Moreover, the affidavit fails to cite any knowledge the officer possessed suggesting why these unidentified informants were reliable—their occupations, reputations, lack of criminal background, or the like. Therefore, informants I and III must be treated as anonymous tipsters whose stories may factor into the probable cause determination but require corroboration.

The majority opinion asserts that even if the police did not know the identity of informants I and III there were other facts set out in the affidavit indicating these persons were "citizen" informants. This argument is flawed for two reasons. First, the presumption of reliability accorded to citizen informers is based primarily on the premise the police know the identity of the informants. If the informers are anonymous there is no basis for assuming their credibility. Second, the facts on which the majority relies do not reasonably lead to the conclusion the informants were citizen informants.

In *Kershaw, supra,* 147 Cal.App.3d 750, we explained why the informant's identity must be known to the police in order for the informant to be characterized as a citizen informant.

"The courts have distinguished between sources who volunteer information to promote their own special interests and informers who volunteer information out of a sense of civic responsibility. The former class includes informants who are themselves criminals, drug addicts or professional 'stool pigeons.' The factors motivating these informants include offers of immunity or sentence reduction, money payments, revenge or the hope of eliminating criminal competition. (Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards* (1972) 81 Yale L.J. 703, 712-713.) The latter class consists of ordinary citizens who are the victims of, or witnesses to, a crime. (*People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814 [124 Cal.Rptr. 585] and cases cited therein.) These informers act openly in aid of law enforcement motivated by good citizenship. (*People* v. *Smith* (1976) 17 Cal.3d 845, 850-851 [132 Cal.Rptr. 397, 553 P.2d 557].) Because of their differences in character and motivation, 'the requisite

showing of reliability in the case of a citizen informant is significantly less than that demanded of a police informer.' (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].) Information coming from private citizens who are witnesses to or victims of a criminal act is presumed reliable. (*Ibid.*)

"In order for the presumption of reliability to apply, however, the affidavit must affirmatively set forth the circumstances from which the existence of citizen-informer status can reasonably be inferred by a neutral and detached magistrate. (*People* v. *Smith, supra,* 17 Cal.3d at p. 852.) Nothing in the record here suggests the police were ever aware of the identity or background of the informant. Therefore, the presumption of reliability that attaches to information from ordinary citizen informants is not applicable here. That rule 'presupposes that the police be aware of the identity of the person providing the information and his status as a true citizen informant. [Citation omitted.] . . . In short, probable cause will not be provided by conclusionary information or anonymous informants . . . .' (*People* v. *Ramey, supra,* 16 Cal.3d at p. 269.)

". . . . . . . . . . . . . . . . . . . . .

"In the case of confidential citizen informers, the mere fact that they make their identity known to the police is, itself, some indication of their honesty. (*United States* v. *Harris* (1971) 403 U.S. 573, 599 [29 L.Ed.2d 723, 742, 91 S.Ct. 2075] [Harlan, J. dis.].) A further indication of reliability is that by identifying themselves to the police they expose themselves to potential liability for malicious prosecution or false reporting of a crime if their information proves to be false. (*People* v. *Mardian* [(1975) 47 Cal.App.3d 16, 32.] Furthermore, by identifying themselves, these citizen informers afford the police the opportunity to check on matters affecting their credibility such as the existence of a criminal record and whether they had previously supplied information to the police.

"In contrast, information from anonymous sources is inherently unreliable. Neither the police nor the magistrate knows the motives of the unknown informant. Here the informer may have been motivated by concern for the welfare of a relative as he/she claimed to be (cf. *People* v. *Mardian, supra,* 47 Cal.App.3d at p. 33) or may have been perpetrating a hoax on the police or seeking revenge on a neighbor (cf. *Norton* v. *United States* (4th Cir. 1978) 581 F.2d 390, 391-392). In addition, the police and the magistrate cannot possibly know how the informant obtained the information (*People* v. *Reagan* (1982) 128 Cal.App.3d 92, 98-99 [180 Cal.Rptr. 85]). Nor can they obtain additional information to check out the informer's credibility. Without knowing the identity of the source, the police cannot

even determine whether he or she is a criminal, a drug addict, a 'stoolie' or an otherwise inherently unreliable individual. Moreover, where the anonymous information comes over the telephone, as it did here, the police have no opportunity to observe the informer's demeanor while relating the information. Thus, they are deprived of an important facet to the determination of a witness' credibility. (See, generally, Comment, *Anonymous Tips, Corroboration, and Probable Cause,* 20 Am. Crim. L.Rev. (1982) 99, 105-107.) We note that decisions of California courts and the United States Supreme Court appear to be unanimous in rejecting anonymous tips, standing alone, as the basis for a search warrant. (See, e.g., *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 [109 Cal.Rptr. 304, 512 P.2d 1208]; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 871 [34 Cal.Rptr. 251]; *Adams* v. *Williams* (1972) 407 U.S. 143, 146-147 [32 L.Ed.2d 612, 617-618, 92 S.Ct. 1921]." (147 Cal.App.3d at pp. 755-757, fn. omitted.)

The majority cites dictum in the case of *People* v. *Superior Court* (*Haflich*) (1986) 180 Cal.App.3d 759, 768 [225 Cal.Rptr. 762] for the proposition that in determining whether an informant is a citizen informant the informant's identity is irrelevant. (Maj. opn. at p. 148.) *Haflich* is totally inapposite to the issue we consider in this case.

In *Haflich* the police responded to a telephone call from a man in "panic" and "obvious fear" and who told police he had been in a friend's house when three men with handguns broke into the house. The unidentified caller told police he was afraid his friend was going to be killed. (180 Cal.App.3d at pp. 764-765.) The police met the caller who accompanied them to the house cowering on the floorboard of the police car. The police made a warrantless entry and search of the house. No men with guns were found but the police did find, in plain sight, some white powder and marijuana. The discovery of these items led to the issuance of a search warrant. (*Id.,* at p. 765.)

The issue in *Haflich* was whether the warrantless entry into defendant's home was justified by the circumstances described by the unidentified "friend" of the "victim." The court held the life threatening nature of the reported crime, the panic of the informant, as well as other factors, justified a warrantless entry and search under exigent circumstances. "Failure to obtain [the informant's] name prior to entering defendant's house does not foreclose reasonable reliance on his information." (180 Cal.App.3d at p. 768.)

*Haflich* differs from the case before us in several very important ways. When the police made their initial, warrantless search they did so on the basis of the extraordinary story told by the informant and his fear and panic which obviously lent credence to his story. Even then, as the court notes, the informant was not truly anonymous because he conveyed his informa-

tion to the police in person, accompanied them to the house and remained across the street hiding behind a post while they investigated. (*Id.*, at p. 764.) Obtaining the informant's name under those circumstances would have been irrelevant to the question whether there were exigent circumstances existing to justify an entry and search of defendant's home. In the case before us, the police did not act under exigent circumstances. They did not state in the affidavit they had personally met the informants and that they could at least describe them. Nor did they have the opportunity to observe their demeanor, as the police in *Haflich* did. (See *Kershaw, supra,* 147 Cal.App.3d at p. 757.) When the police requested a search warrant in *Haflich* they did so on the basis of their own observation of narcotics and narcotic paraphernalia in defendant's home; not on the basis of an informant's claim three men were holding another man at gunpoint there. (180 Cal.App.3d at p. 765.) The question whether the informant was a "citizen informant" was irrelevant to issuance of the search warrant.

In the course of its decision in *Haflich* the court in dictum remarked that unless the informant is someone whose name is synonymous with truthfulness the informant's name adds nothing to his reliability. (*Id.*, at p. 768.) This comment misses the point. It is not important whether the informant's name turns out to be John Paul II or Joe Isuzu. The mere fact the person makes her identity known to the police is an indication of her honesty. (*People* v. *Kershaw, supra,* 147 Cal.App.3d at p. 756.) So too is the fact by doing so she subjects herself to criminal liability if the story is fabricated. (*Illinois* v. *Gates, supra,* 462 U.S. at p. 233 [76 L.Ed.2d at p. 545].) Furthermore, by identifying himself the informant gives the police the opportunity to check on matters affecting his credibility. (*Kershaw, supra,* 147 Cal.App.3d at p. 756.)

The majority argues even though the informants' identities were unknown to the police there was another indication in the affidavit the informants were citizen informants: the informants' observations were "consistent with observations of concerned neighbors rather than participants in criminal activities." (Maj. opn. at p. 148.) I disagree. The observations are consistent with observations that might be made by *either* a concerned neighbor *or* a participant in criminal activity. The informants reported: (1) heavy traffic to and from defendant's residence; (2) seeing defendant and an unidentified man hiding and retrieving something from the hubcaps of vehicles in defendant's driveway; (3) seeing an unidentified man hide two plastic bags containing a white powdery substance under his armpits. None of these observations are limited by their nature to things that only a "concerned neighbor" could have observed. They might just as well be the observations of a rival drug dealer or other customers of defendant. Indeed, as far as the magistrate knew, the "observations" of informants I and III

may have been nothing more than the report of barroom gossip or the imaginings of a skillful liar. (See 1 LaFave, Search and Seizure (2d ed. 1987) pp. 672, 682.)

The purported personal observations of an anonymous tipster are not enough to establish probable cause for a search. In *Gates,* the police received an anonymous letter purporting to describe the Gateses' criminal conduct in a way that indicated the writer obtained the information from the Gates themselves or someone they trusted. (462 U.S. at p. 246 [76 L.Ed.2d at p. 553].) Nevertheless, the court found the letter "standing alone . . . would not provide the basis for a magistrate's determination [of probable cause]. The letter provides virtually nothing from which one might conclude that its author is either honest or his information reliable; . . . Something more was required, . . ." (*Id.,* at p. 227 [76 L.Ed.2d at p. 541].) The "something more" of course was independent corroboration of the informant's story. (*Id.,* at p. 246 [76 L.Ed.2d at p. 553].)

In the case before us, as in *Gates,* there is virtually nothing from which one might conclude informant I or III, individually, was honest or reliable. Accordingly, independent corroboration was required.

III. An Anonymous Informant Cannot Make a Declaration Against Penal Interest.

The majority opinion asserts the credibility of informants II and IV is established by their admissions they purchased cocaine from defendant at his residence and used the cocaine. According to the majority, "Such statements are against their penal interests and are an indication of their veracity." (Maj. opn. at p. 149.) But this inference is not warranted where, as here, *the informers are anonymous.*

The reason why declarations against penal interest are considered an indication of credibility is because "rational people are unlikely to make false statements against their own penal interests." (*People* v. *Campa* (1984) 36 Cal.3d 870, 882 [206 Cal.Rptr. 114, 686 P.2d 634].) But this rationale presupposes the police know the identity of the person making the declaration. The rationale breaks down in a situation, as here, where the declarant is an anonymous telephone caller. Surely a person runs no risk of arrest in making an anonymous confession to a crime. In *Harris,* both the majority and dissent recognized that if declarations against penal interest were to be used to establish the informant's credibility the informant must be known to the police. (*United States* v. *Harris* (1970) 403 U.S. 573, 584-585, 594 [29 L.Ed.2d 723, 734-735]). The court noted "[t]he police . . . almost certainly knew [the informant's] name" (*id.,* at p. 585 [29 L.Ed.2d at p. 734]) and had

"a sworn verbal statement" from the informant. (*Id.*, at p. 575 [29 L.Ed.2d at p. 729].) Thus, the informant's statement was undoubtedly against his penal interest. Neither of these factors are present in the case before us. Our case is much closer to *State* v. *Mabrey* (1976) 140 Ga.App. 577 [231 S.E.2d 461] in which the court held an anonymous admission of participation in the crime under investigation did not establish the informant's credibility. "We fail to see how there can be even an implicit showing of reliability in anonymous admissions of criminality." (*Id.*, at p. 463.)

## IV. We Cannot Afford the Risk of Allowing Allegations So General and Conclusionary They Would Permit Searches Premised Solely on the Uncorroborated Statements of Anonymous Informants.

The real vice of the majority opinion is the risk it creates that future searches will be premised solely on uncorroborated, anonymous tips. The allegations in the instant affidavit were so general and so conclusionary as to the nature of the informants that a reviewing magistrate would have no reasonable basis for concluding these were informants whose identities were known rather than being anonymous tipsters. For reasons explained earlier, such allegations as were set forth in the affidavit are as consistent with an unknown anonymous informant as with one whose name, address, and identity the officer had in his possession.

A conclusionary characterization that the officer received information from a "confidential *citizen* informant" is no more sufficient than one he received information from a "confidential *reliable* informant." In either case it takes more. It takes factual allegations allowing the neutral magistrate to verify that the conclusionary label the officer placed on the informant is indeed true.

Admittedly, the officer testified at the first suppression hearing that he did have the names and addresses of the informants "in his notes" and would produce those notes at the second hearing. At the second hearing, however, the officer had to concede he had not been able to locate those notes nor to recall the names of the informants. In any event, assuming the officer actually knew the identity of the informants at the time he went to the magistrate that would still not cure the deficiency in the affidavit used to procure this search warrant. The validity of a search warrant must be based not on what the officers knew but on what they conveyed to the neutral magistrate. "Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. . . . A contrary rule would, of course, render the

warrant requirements of the Fourth Amendment meaningless." (*Whiteley* v. *Warden* (1971) 401 U.S. 560, 565, fn. 8 [28 L.Ed.2d 306, 311, 91 S.Ct. 1031]. See also *People* v. *Superior Court* (1981) 30 Cal.3d 193 [178 Cal.Rptr. 334, 636 P.2d 23]; 2 LaFave, *supra,* § 4.3(a) and authorities cited therein.)

We cannot allow searches to be premised on affidavits so general and conclusionary that the neutral magistrate cannot reasonably determine whether the informants are known to the police or are merely anonymous tipsters. Otherwise we invite searches premised solely on unsubstantiated anonymous tips not just those premised on informants whose identity and reliability are known to the police. Here the allegations were so general and conclusionary that virtually the first question out of the trial judge's mouth after reading the affidavit was whether the officer actually knew the identity of the informants. He found the allegations in the affidavit woefully inadequate to make that determination. The court's next questions pursued the issue—since the officer testified he knew the informants' identities why didn't he say so in the affidavit.

The instant case happens to have involved informants whose identities evidently were known to the police and who turned out to be accurate, well-motivated people whose information netted a narcotics trafficker. However, the majority opinion approves an affidavit so general and conclusionary that a search warrant can now be supported by four—and perhaps three or two—*uncorroborated, anonymous* tips.

Think how easy it would be for four people—or maybe three or even two—to activate a police invasion of an innocent person's home. (Indeed Rich Little or a lesser impersonator could create probable cause all by himself.) The conspirators could be motivated by animosity or merriment. Whatever the reason, all they would have to do is call the police at different times and whisper similar yet independent sounding accusations about what was going on at their innocent target's house. Or they might send anonymous letters or employ a combination of letters and phone calls. One could claim to be a fellow criminal associated somehow in the target's alleged crimes. Another could tell a story as a casual passerby presenting all the attributes of a classic citizen informant.

There would be no need for the police to check out the information the tipsters supplied even though, by definition, the officers would have no ability to appraise the veracity of the tipsters themselves. For, under the majority opinion in the instant case, the informants would be self-validating. Moreover, the majority opinion does not require any allegations establishing the officers knew the informants' identity or, if not, that they had independently corroborated the informants' information. Hence the police

who received what in fact were malicious and inaccurate anonymous tips could innocently submit an affidavit identical in language and substance to the one submitted in the instant case and expect it would be found sufficient to support a search warrant.

In a world where this is possible, none can be safe from their enemies or pranksters even in the supposed privacy of their own homes. I do not welcome such a world and therefore respectfully decline to do anything which might lead to its creation. In my opinion, this court should have advised law enforcement officers in no uncertain terms of two propositions. First, *uncorroborated* anonymous tips cannot by themselves supply enough probable cause to support a search warrant. Second, search warrant affidavits must recite facts affirmatively establishing whether the officers know the identity of their informants. Only if affidavits are held to this standard can we be safe from unreasonable, unfounded, and sometimes maliciously motivated searches of our homes.

Respondent's petition for review by the Supreme Court was denied November 16, 1989. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.