Filed 3/22/24  P. v. Glaspey CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL LEROY GLASPEY,<br><br>        Defendant and Appellant. | A167071<br><br>(Del Norte County Super. Ct. No. CRF-21-9513) |

Defendant Michael Leroy Glaspey entered a no contest plea to one count of possession of methamphetamine for sale, in violation of Health and Safety Code section 11378.  His plea followed the denial of his motion to quash the search warrant and suppress evidence.  He appeals, arguing that the magistrate issued the warrant despite an insufficient showing of probable cause and that the good faith exception to the exclusionary rule is inapplicable.  We affirm.

## BACKGROUND

### I.    Search Warrant

On November 3, 2021, Crescent City Police Officer Ethan Miller sought a warrant to search defendant's residence, person,

1

vehicles, and electronic storage devices for, inter alia, methamphetamine and drug paraphernalia. Officer Miller is recognized as a drug-sales expert in the Del Norte County Superior Court. In support of the warrant, Officer Miller included an affidavit, which, in summary, stated the following:

On October 31, 2021, Officer Miller was dispatched to the areas of 9th Street and J Street and 8th Street and J Street based on a report of a male subject circling the blocks. Several residents pointed out the male subject, whom Officer Miller recognized as Jay Bardwell (Bardwell) from prior contacts. Officer Miller had seen Bardwell around 975 9th Street "dozens of times over the past several months."

Officer Miller had personally "witnessed foot traffic at all hours of the night and day coming and going from 975 9th Street for several years," and had "made several drug arrests of person[s] in the area coming and going from 975 9th Street over the past several years."

Officer Miller initiated a consensual contact with Bardwell. When Officer Miller asked Bardwell what he was doing in the area, Bardwell said he was waiting for a friend, "Mike." Officer Miller asked Bardwell if he was in the area to buy drugs; Bardwell responded by nodding several times. When asked if he purchased drugs from Mike about once a week, Bardwell said, "Yeah." Bardwell stated that he typically bought "20" or a "Tiner" (one-sixteenth of an ounce) from Mike. Bardwell told Officer Miller that he had purchased a "$40–$50 sack" of methamphetamine from Mike the day before on October 30, 2021.

Bardwell said he had $6 on him and that he was hoping to purchase one to two "bowls." Although Bardwell did not know the quantity of drugs Mike kept, Bardwell stated that Mike "always" had enough drugs to sell Bardwell the amount he wanted.

Bardwell confirmed that Mike lived at the Del Norte Motel (975 9th Street) in apartment No. 5 and owned a white Dodge Charger. Bardwell further told Officer Miller that Mike's last name was "something like 'Gaspey.'"

Officer Miller then contacted a Concerned Citizen who lives in the area of 975 9th Street. Officer Miller described the Concerned Citizen as a person "in good standing in the community, not known to be involved in any criminal activity and [who] owns and operates a local business."

The Concerned Citizen had previously told Officer Miller that they[1] believed defendant was dealing methamphetamine from 975 9th Street. The Concerned Citizen identified the resident of 975 9th Street, apartment No. 5, as "Michael G." The Concerned Citizen told Officer Miller that Michael G. usually had a rotation of two to three customers a day who showed up at all hours of the day and night, alone, and who only stayed for short periods of time. The Concerned Citizen referred to the people visiting Michael G. as "customers" because they did not appear to have an obvious relationship with anyone else in the area. The Concerned Citizen explained that the neighborhood was

---

[1] As the affidavit uses the pronoun "they" to refer to the Concerned Citizen, we do so as well.

otherwise a community where "everyone knows everyone very well," and that no one else in the area had visitors repeatedly coming and going like Michael G. at 975 9th Street, apartment No. 5.

The Concerned Citizen had been exposed to a "fair, decent amount" of drug dealing within their own family and was therefore familiar with "how it work[ed]." The Concerned Citizen "recognized the way [defendant's customers] acted as the same or similar behaviors to [*sic*] seeing people buy drugs from their father in the past."

Based on the information the Concerned Citizen provided, Officer Miller concluded in his expert opinion that "the Concerned Citizen was also an expert on the illegal sale of drugs and the general behaviors associated with drug[] sales from a residential location."

Officer Miller ran a Department of Motor Vehicles license plate check of the white Dodge Challenger parked in front of defendant's residence and confirmed it was registered to defendant at 975 9th Street, apartment No. 5. Officer Miller also ran a criminal history check, which revealed that on separate dates in 2003, defendant had suffered two felony convictions for possession of pseudoephedrine with intent to manufacture methamphetamine.

Based on these record checks, the statements by Bardwell and the Concerned Citizen, and his own personal observation of foot traffic at all hours of the day and night in the area around

4

975 9th Street, Officer Miller believed defendant to be selling methamphetamine from his residence.

## I. Motion to Quash and Ruling

On April 15, 2022, defendant filed a motion to quash the warrant and suppress the evidence seized. He argued the search warrant was issued without probable cause and was so facially deficient that a reasonable officer would not have had a good faith belief in its sufficiency.

The prosecutor opposed the motion to quash, arguing that the warrant was issued with probable cause, or alternatively, that the good faith exception to the exclusionary rule under *United States v. Leon* (1984) 468 U.S. 897 applied.

The court denied defendant's motion, finding that the search warrant was validly issued and that the officer acted in good faith.

On October 10, 2022, defendant entered a no contest plea to one count of possession of methamphetamine for sale, in violation of Health and Safety Code section 11378. Defendant timely filed a notice of appeal.

## DISCUSSION

## II. Probable Cause Supported Issuance of the Search Warrant

### A. Standard of Review

In reviewing a ruling on a motion to suppress under Penal Code section 1538.5, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the

5

search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

Probable cause exists when, based on the totality of the circumstances described in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 (*Gates*).) "The task of the issuing magistrate is simply to make a practical, commonsense decision" as to whether the totality of the circumstances supports a finding of probable cause. (*Ibid.*)

On appeal, the reviewing court assesses "whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing." (*People v. Kraft* (2000) 23 Cal.4th 978, 1040.) "[B]ecause '[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause,' we accord deference to the magistrate's determination and . . . [resolve cases] with a preference for upholding a search under a warrant." (*People v. French* (2011) 201 Cal.App.4th 1307, 1315 (*French*.)

**B.    *The Affidavit Established the Reliability and Bases of the Informants' Knowledge.***

"While an informant's veracity, reliability, and basis of knowledge are all highly relevant in determining" whether sufficient probable cause exists, "these elements should not be understood as entirely separate and independent requirements to be rigidly exacted in every case, but understood simply as closely

6

intertwined issues" to be assessed under the totality of the circumstances. (*People v. Terrones* (1989) 212 Cal.App.3d 139, 146 (*Terrones*).) That is, the absence of one element can be compensated for by a strong showing on another element. (*Gates*, *supra*, 462 U.S. at p. 233.)

Defendant argues that neither Bardwell nor the Concerned Citizen provided information that was sufficiently "detailed or corroborated" to establish their reliability. Based on our review of Officer Miller's affidavit and as explained *post*, we disagree.

### 1. Concerned Citizen

Citizen informants are "private citizens who are witnesses to or victims of a criminal act." (*People v. Kershaw* (1983) 147 Cal.App.3d 750, 755, superseded by statute on another ground as stated in *People v. Burch* (1986) 188 Cal.App.3d 172, 176–177.) The information citizen informants provide to law enforcement is presumed to be reliable. (*Ibid.*)

The Concerned Citizen is a "citizen informant" and — as defendant concedes — is presumed to be a reliable witness. (See *People v. Lombera* (1989) 210 Cal.App.3d 29, 32 (*Lombera*) ["it is not necessary that the informant's name be disclosed in the affidavit for the status of citizen informant and its attendant presumption of reliability to attach"].) In his affidavit, Officer Miller stated that the Concerned Citizen was a person of good standing in the community, not known to be involved in any criminal activity, who owned and ran a local business. Officer Miller had interacted with the Concerned Citizen on an earlier occasion, and the Concerned Citizen had previously told Officer

7

Miller that they believed defendant was "dealing methamphetamine from 975 9th Street." Nothing suggests that the Concerned Citizen had any motivation to lie or that Officer Miller should have questioned the Concerned Citizen's reliability.

Further, the affidavit explained in detail how the Concerned Citizen obtained their knowledge of defendant's criminal activity. First, the Concerned Citizen described the observed pattern of foot traffic to defendant's home: a "changing rotation of multiple people," usually two to three customers a day, several times a week. The Concerned Citizen indicated that the "shady" customers showed up at all hours of the day and night, alone, and only stayed for short periods of time. The Concerned Citizen further explained the basis of their suspicion by stating that the people who visited defendant did not have any obvious connections to anyone else in the neighborhood, which was otherwise a community where "everyone knows everyone very well," and by noting that no one else in the area had visitors repeatedly coming and going like defendant at 975 9th Street, apartment No. 5.

Second, the Concerned Citizen told Officer Miller they had observed a "fair, decent amount" of drug dealing within their own family, so they were familiar with "how it work[ed]." The Concerned Citizen continued by stating that they recognized the way defendant's customers acted as being the same as or similar to behavior they had seen from people buying drugs from their father in the past. Based on the information the Concerned Citizen provided, Officer Miller concluded in his expert opinion

8

that the Concerned Citizen was "also an expert on the illegal sale of drugs and the general behaviors associated with drug[] sales from a residential location."  (Cf. *People v. Nicholls* (2008) 159 Cal.App.4th 703, 711 ["[L]aw enforcement officers may draw upon their expertise to interpret the facts in a search warrant application, and such expertise may be considered by the magistrate as a factor supporting probable cause"].)  Nothing in the affidavit undermines the Concerned Citizen's presumption of reliability.  (See *Lombera, supra,* 210 Cal.App.3d at p. 32.)

Citing primarily to *French*, defendant argues that the information provided by the Concerned Citizen failed to establish reliability.  *French* is distinguishable.

In *French*, the affidavit named one of the informants as "[c]onfidential reliable informant one" without providing any facts in support of the informant's reliability.  (*French*, *supra*, 201 Cal.App.4th at p. 1317.)  Additionally, confidential reliable informant two (CRI-2) told officers that he/she knew the defendant was selling drugs from the home the defendant shared with another person because when CRI-2 was at the defendant's residence, CRI-2 saw people come inside, get taken into another room, and leave a short time later.  (*Id.* at p. 1313.)  CRI-2 "believed the people who came to [the] house were buying drugs." (*Ibid.*)  Based on this information, the People contended that CRI-2 witnessed " 'heavy foot traffic.' "  (*Id.* at p. 1319.)  The appellate court concluded, however, that the affidavit's lack of information regarding "how many people CRI-2 observed or whether CRI-2 witnessed people being taken to another room

9

more than once" could not support an assertion that there was " 'heavy foot traffic.' " (*Ibid.*)

By contrast, Officer Miller included in the affidavit facts supporting the Concerned Citizen's reliability — namely, that the Concerned Citizen was a person "in good standing in the community, not known to be involved in any criminal activity and [who] own[ed] and operate[d] a local business." Further, unlike in *French*, the Concerned Citizen specified that they saw two to three people visit defendant's home per day, several times a week, for short periods of time. This pattern was consistent with the drug-dealing behavior the Concerned Citizen witnessed in their own household because of their drug-dealing father. Finally, unlike the Concerned Citizen here, the confidential reliable informants in *French* were not private citizens whose information comes with a presumption of reliability. (See *Lombera, supra,* 210 Cal.App.3d at p. 32.) *French* is therefore distinguishable, and the information the Concerned Citizen provided to Officer Miller was reliable.

## 2. Bardwell

Bardwell's basis for his knowledge of defendant's criminal activity is significant, as Bardwell had personally purchased methamphetamine from defendant in the very recent past.

In *Terrones*, *supra*, 212 Cal.App.3d at page 149, the court noted that probable cause was supported by information from two admitted cocaine purchasers who told police they had purchased cocaine from the defendant. The statements were made against the purchasers' penal interests and were thus "an indication of

10

their veracity." (*Ibid*.; see also *Bailey v. Superior Court* (1992) 11 Cal.App.4th 1107, 1112 [distinguishing *Terrones* and holding that because the informants never "actually purchased drugs from [defendant]," they could not conclude that she was dealing drugs].)

As in *Terrones*, Bardwell's statements to Officer Miller were made against his penal interest. Bardwell told Officer Miller that he purchased a "20" or "Tiner" from defendant about once a week. Just one night before Officer Miller spoke to him, on October 30, 2021, Bardwell purchased a "$40–$50 sack" of methamphetamine from defendant. Bardwell further told Officer Miller he was in the area that night to buy more drugs from defendant. Though Bardwell did not have any drugs on him while speaking to Officer Miller, Bardwell said he had $6 on him that he was hoping to spend on "1–2 'bowls.' "

Finally, the information Officer Miller received from Bardwell and the Concerned Citizen was mutually supportive. (*United States v. Laws*, (D.C. Cir. 1986) 808 F.2d 92, 103 ["the mutually-supporting nature of the two tips is an important ingredient in the probable-cause mix. . . . The fact that two apparently unassociated persons make the same assertion increases the probability that it is true."]; *Terrones*, *supra*, 212 Cal.App.3d at p. 147.)

## C. *Police Corroboration*

Defendant also argues that the information Bardwell and the Concerned Citizen provided was insufficient to support probable cause until corroborated by Officer Miller and that

11

Officer Miller's corroboration was insufficient because it consisted only of confirmation of "pedestrian facts." Adequate corroboration "must pertain to the alleged criminal activity," and not to the suspect generally. (*People v. Gotfried* (2003) 107 Cal.App.4th 254, 263–264.) Law enforcement needs to corroborate more than "easily obtained facts"; however, corroboration is sufficient if it uncovers probative indications of criminal activity consistent with the information provided by informants. (*Bailey v. Superior Court*, *supra*, 11 Cal.App.4th at p. 1112; *Gotfried*, at p. 264.)

Prior convictions favor "a finding of probable cause in a way that 'bald and unilluminating assertions' of a suspect's reputation do not." (*United States v. Laws*, *supra*, 808 F.2d at p. 103; see also *People v. Kershaw*, *supra*, 147 Cal.App.3d at p. 760.) For example, in *People v. Camarella* (1991) 54 Cal.3d 592, 598, the affidavit referenced the defendant's four-year-old arrest for possession of the same narcotic at issue in the warrant application. Although the prior arrest was several years old, the California Supreme Court nonetheless concluded that the officer substantially corroborated the information received from the informants. (*Id.* at p. 606.)

Here, Officer Miller conducted independent investigations before and after receiving information from Bardwell and the Concerned Citizen. In the affidavit, Officer Miller explained that he had personally "witnessed foot traffic at all hours of the night and day coming and going from 975 9th Street for several years," and that he had "made several drug arrests of person[s] in the

12

area coming and going from 975 9th Street over the past several years." Additionally, Officer Miller ran a license plate check on the white Dodge Challenger parked in front of defendant's residence and confirmed that it was registered to defendant at 975 9th Street, apartment No. 5. Most importantly, Officer Miller included defendant's criminal history in the affidavit, noting that defendant was twice found guilty of felony possession of pseudoephedrine with intent to manufacture methamphetamine in January and February of 2003.

These facts distinguish this case from *Higgason v. Superior Court* (1985) 170 Cal.App.3d 929, upon which defendant relies. In *Higgason*, the court identified two major deficiencies in the affidavit: (1) All the incriminating evidence originated from anonymous sources; and (2) police investigation revealed only " 'easily obtained facts,' " like the defendant's physical description, residence, and vehicle, none of which pertained to the alleged criminal activity. (*Id*. at pp. 938–940.) Here, however, Officer Miller personally knew and spoke with both Bardwell and the Concerned Citizen, and the affidavit offered considerably more corroboration, including defendant's prior convictions for the same type of drug-dealing activity. *Higgason* is therefore distinguishable, and Officer Miller's corroboration was sufficient.

In sum, the totality of the circumstances outlined in the affidavit support the magistrate's finding that there was probable cause supporting the warrant.

13

## III. Good Faith Exception

Having concluded that there was a substantial basis for the issuing magistrate's probable cause determination, we need not address the issue of whether Officer Miller could rely in good faith on the search warrant pursuant to *United States v. Leon*.

We conclude that the trial court properly denied the defense motion to quash the warrant and suppress evidence.

## DISPOSITION

Affirmed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.

*People v. Glaspey* (A167071)